BELLFLOWER AG SERVICE, INC., Plaintiff-Appellant, v. FIRST NATIONAL BANK & TRUST COMPANY IN GIBSON CITY, Defendant-Appellee.

Fourth District   No. 4—84—0317

Opinion filed January 17, 1985.—Rehearing denied February 22, 1985.

William S. Bach, of Bach & Laudeman, Ltd., of Bloomington, for appellant.

James T. Foley, of Livingston, Barger, Brandt & Schroeder, of Bloomington, for appellee.

JUSTICE MILLS delivered the opinion of the court:

Alan Schultze took his employer for $133,525.11 by conversion of company checks.

The court below found his endorsement of the checks was authorized.

We cannot agree that the evidence supports this finding.

We reverse and remand.

Bellflower Ag Service, Inc., commenced this action against First National Bank & Trust Company in Gibson City (bank) for the alleged conversion of certain bank checks belonging to the corporation. The complaint charged that the bank had paid checks written to the order of Bellflower Ag Service, Inc., to Alan Schultze on unauthorized endorsements. The checks totaled $133,525.11. Following a bench trial, the court entered judgment for the defendant bank, finding that the endorsements in issue were authorized and effective.

On appeal, plaintiff challenges the sufficiency of the evidence supporting the judgment, and the admissibility of certain documents allowed in evidence at trial. Due to our disposition of the first issue, we do not address the evidentiary question.

## FACTS

The facts of the case are largely undisputed. Bellflower Ag Service, Inc., is a corporation engaged in retail sales of farm chemicals and fertilizers. Gene Jannusch, his wife Martha, and Alan Schultze were the sole shareholders of the corporation and also served as the

company's board of directors and executive officers. Schultze was employed as the operating manager of the corporation's plant. Jannusch and Schultze had originally purchased the company together, but they incorporated soon thereafter.

Gene Jannusch testified that the corporation had accounts with the National Bank of Bloomington and with the Corn Belt Bank in Bloomington. He stated that he, his wife, and Schultze were all authorized to sign checks on those accounts, and all three were authorized to endorse checks for deposit in the accounts. Jannusch said that the corporation never had an account at the defendant bank and never had any prior contact with that bank.

In the summer of 1982, Jannusch discovered irregularities in the corporation's invoices. When confronted with the irregularities, Schultze admitted that he had appropriated corporate funds for his private use. According to Jannusch, Schultze said that he deposited checks written to the order of the corporation in his personal account. From the personal account, Schultze paid both business expenses and personal expenses.

On cross-examination, Jannusch testified that although Schultze was authorized to write checks on corporate accounts, and to collect accounts receivable, his authority to endorse checks was limited to deposits in the corporate accounts. He specifically stated that Schultze had no authority to endorse checks for deposit in accounts at the defendant bank. Jannusch testified that he had never indicated that Schultze possessed such authority.

Joel Martins, a CPA, testified that he was engaged by the plaintiff to determine the extent of the shortages. The accounting firm found that over $133,000 had been diverted from the corporate accounts to Schultze's private account at the defendant bank.

Robert Knapp, who served as executive vice-president, trust officer and chief executive officer of the defendant bank in 1982, verified that the plaintiff did not have an account with the bank. With reference to a particular check for $44,613.57 which was written to the order of the plaintiff, Knapp admitted that the bank deposited the amount in Schultze's personal account on Schultze's endorsement. Knapp testified that the bank did nothing to verify the endorsement, but accepted it "as he knew he was associated with [plaintiff]." He stated that the bank had no corporate resolution to establish Schultze's authority to endorse checks written to the corporation, but that bank records indicated Schultze was in partnership with Jannusch. These records were never produced at trial.

Alan Schultze appeared but declined to testify on the advice of his

attorney.

Defendant called Claudia Chase, and Gene Jannusch as an adverse witness. Chase, the installment loan officer at the bank, testified that Schultze had applied for a loan at the bank in 1981. She laid the foundation for the admission of Schultze's loan file. The file included a handwritten note which indicated that Schultze was a 15% shareholder of the plaintiff corporation and that he was a salaried employee. Jannusch, testifying as an adverse witness, presented his accounting of the corporate obligations which Schultze had personally paid. Those payments amounted to $28,052.81.

On April 6, 1984, the circuit court entered judgment for the defendant. He found that Schultze had possessed apparent and actual authority to endorse checks written to the order of the plaintiff in a manner which permitted their deposit in Schultze's personal account. The court characterized the issue as one not involving unauthorized endorsements, but rather an unauthorized use of funds subsequent to lawful negotiation of the checks. The trial judge found that the defendant bank was absolved of liability under section 9 of "An Act concerning liability for participation in breaches of fiduciary obligations" (Uniform Fiduciaries Act) (Ill. Rev. Stat. 1983, ch. 17, par. 2009), because the bank had no actual knowledge that Schultze breached his obligation to the plaintiff.

## Opinion

Plaintiff argues on appeal that the trial court erred in finding that Schultze had authority to endorse the checks in the manner he endorsed them. As a consequence, plaintiff contends, the protections of section 9 of the Uniform Fiduciaries Act are not available to defendant because the statute presupposes a fiduciary's lawful authority to endorse. We agree.

## I

The trial judge found that Schultze had both actual and apparent authority to make the endorsements which permitted the deposit of the checks in Schultze's personal account. The evidence relating to *actual authority* is scant. The subject was raised only in the testimony of Gene Jannusch. That testimony appeared as follows:

Direct Examination

"[Plaintiff's Counsel]: Can you tell me where those bank accounts were?

[Jannusch]: The National Bank in Bloomington and the Cornbelt Bank in Bloomington.

Q. Okay, and these were company accounts? And who was authorized to sign checks on those accounts?

A. The three of us. Myself, my wife and Alan Schultze.

Q. And were they also the three persons who were entitled to endorse checks for deposit in those accounts?

A. Yes."

Cross-Examination

"[Defense Counsel]: Now, I believe it was your testimony that Mr. Schultze was authorized to sign checks for the company?

[Jannusch]: Yes.

Q. Endorse checks for the company?

A. Yes."

Redirect Examination

"[Plaintiff's Counsel]: All right. Now, Mr. Foley asked you about his authority to endorse checks. Was that limited to checks for deposit at certain banks?

[Jannusch]: Yes.

Q. All right. And which were those banks?

A. The National Bank and then the Cornbelt Bank of Bloomington.

Q. The National Bank where?

A. In Bloomington.

Q. The National Bank of Bloomington, not the First National Bank of Gibson City?

A. That's correct.

Q. Did he ever have any authority to endorse any checks or to deal with any funds as far as any accounts at the First National Bank of Gibson City was concerned?

A. No."

Plaintiff asserts that Schultze's authority with regard to the checks was limited to endorsement for deposit in the bank accounts maintained by the corporation. Defendant contends that Schultze was empowered to endorse the checks without restriction, and that Schultze's illegal conduct began with his negotiation of properly endorsed checks. Plaintiff's characterization of Schultze's actual authority suggests that Schultze was empowered to make only special, restrictive endorsements. (See Ill. Rev. Stat. 1983, ch. 26, pars. 3—204(1), 3—206.) Defendant's interpretation, on the other hand, suggests that Schultze had the authority to endorse in blank checks written to the plaintiff. (See Ill. Rev. Stat. 1983, ch. 26, par. 3—204(2).) The evidence showed that Schultze in fact endorsed the checks in

blank, and that the trial judge found that Schultze had actual authority to make such endorsements.

■ We conclude that the testimony does not support the trial court's finding that Schultze had actual authority to endorse in blank checks written to the plaintiff. As quoted above, the only evidence of Schultze's actual authority to endorse indicated a very limited power on Schultze's part. Gene Jannusch testified clearly and consistently that Schultze had power to endorse the checks only for deposit in the plaintiff's accounts. Nothing in the record indicates that Schultze had any broader actual authority. We find that the trial court's finding on this point was in error.

## II

The trial judge also found that Schultze had *apparent authority* to endorse the checks in the manner he endorsed them. Plaintiff maintains that this cannot be so, because apparent authority is based upon words or acts of the principal which convey the impression to third parties that a particular person is acting as his agent. We agree.

■ The record is clear and uncontradicted that there was no contact between plaintiff and defendant before the conversion of the checks was discovered. Both Jannusch and the bank's chief executive officer so testified. Plaintiff is correct that apparent agency arises from acts or words of the putative principal. (*Barraia v. Donoghue* (1977), 49 Ill. App. 3d 280, 364 N.E.2d 952; *Lawcock v. United States Trotting Association* (1965), 55 Ill. App. 2d 211, 204 N.E.2d 802.) Since it is undisputed that there was never any contact between plaintiff and defendant, the trial court's finding of apparent authority is necessarily in error.

## III

■ Although neither the parties nor the trial judge considered *implied authority* in relation to Schultze, that analysis would not change the result here. The rule is:

" '[A]n agent having general authority to manage his principal's business, has, by virtue of his employment, no implied authority to bind his principal by making, accepting or endorsing negotiable paper.' " (*Jackson Paper Manufacturing Co. v. Commercial National Bank* (1902), 199 Ill. 151, 157, 65 N.E. 136, 138.)

There is nothing in the record to suggest that the power to endorse in blank checks written to the plaintiff was a proper or necessary part of Schultze's job as manager. This will not be implied absent proof.

Brady on Bank Checks sec. 23.17 (5th ed. 1979).

■ As plaintiff notes, section 9 of the Uniform Fiduciaries Act presupposes a lawful power to endorse on the part of the fiduciary. Section 9 provides as follows:

> "If a fiduciary makes a deposit in a bank to his personal credit *** of checks payable to his principal and indorsed by him, if he is empowered to indorse such checks *** the bank receiving such deposit is not bound to inquire whether the fiduciary is committing thereby a breach of his obligation as fiduciary." (Ill. Rev. Stat. 1983, ch. 17, par. 2009.)

The purpose of the Act is to facilitate the fiduciary's performance of his responsibilities by limiting the liability of those who deal with him (*Go-Tane Service Stations, Inc. v. Sharp* (1979), 78 Ill. App. 3d 785, 397 N.E.2d 249); it does not purport to absolve a bank from liability when it pays a check on an unauthorized endorsement. The Act provides no protection for the defendant bank under these circumstances, because there was no proof that Schultze was in fact empowered to endorse the checks except for deposit in the corporate accounts. The trial court's finding that section 9 of the Act absolved the bank from liability was erroneous.

### Conclusion

The fact that the checks were made payable to the plaintiff corporation should have put the bank on inquiry as to Schultze's authority to deal with the checks. The bank, by receiving the checks without investigating the matter further, assumed the risk of Schultze's authority. See Ill. Rev. Stat. 1983, ch. 26, par. 3—419(3).

Since the record contains no evidence that Schultze had authority to endorse the checks in the manner he endorsed them, we reverse the judgment of the trial court and remand for consideration of the plaintiff's damages.

Reversed and remanded.

GREEN, P.J., and TRAPP, J., concur.