Mary Kochton APPLEY,
Plaintiff-Appellee,

v.

Stuart WEST, Defendant-Appellant.

Mary Kochton APPLEY,
Plaintiff-Appellant,

v.

NATIONAL REPUBLIC BANK OF
CHICAGO, Defendant-Appellee.

Nos. 86–1970, 86–1070.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 19, 1987.

Decided Nov. 2, 1987.

Stephen R. Swofford, Hinshaw, Culbertson, Moelmann Hoban & Fuller, Chicago, Ill., for defendant-appellant.

Michael J. Gallagher, Cassiday, Schade & Gloor, William J. Harte, William J. Harte, Ltd., Chicago, Ill., for plaintiff-appellee.

Before COFFEY, RIPPLE and MANION, Circuit Judges.

RIPPLE, Circuit Judge.

Mary Kochton Appley brought suit in the district court against Stuart West, individually and as the trustee of a trust agreement, and against the National Republic Bank of Chicago (Republic Bank) after she was allegedly defrauded of substantial financial assets. The district court granted summary judgment in favor of Ms. Appley on her claim against Mr. West for a civil violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1962(b)–(c), 1964(c). Mr. West appeals the order of the district court reinstating summary judgment in favor of Ms. Appley on the civil RICO claim in the amount of $2,871,000.[1]

Ms. Appley alleged Illinois state law claims based on the Uniform Commercial Code (UCC) and the common law of negligence and bad faith against Republic Bank.[2] The district court granted summary judgment in favor of Republic Bank on the UCC claim and dismissed the claims for negligence and bad faith. Ms. Appley appeals the judgment of the district court in favor of Republic Bank.

---

**1.** The district court granted Ms. Appley's motion to reinstate summary judgment against Mr. West on May 8, 1986. Mr. West filed a Notice of Appeal on June 9, 1986. This court issued an order asking whether the appeal was premature because it was not certified for interlocutory appeal pursuant to Fed.R.Civ.P. 54(b) when there appeared to be proceedings still pending before the district court as to another party. *Appley v. West*, No. 86–1970, order at 1 (June 18, 1986). Final judgment was entered June 24, 1986 *nunc pro tunc* May 8, 1986. R. 145; Appellant's (West) Br. at A14. No part of the original action remains pending in the district court.

**2.** Jurisdiction in the district court on those claims was based on diversity of citizenship, 28 U.S.C. § 1332.

For the reasons set forth in the following opinion, we reverse the judgment of the district court in favor of Ms. Appley on her RICO claim against Mr. West and reverse the judgment of the district court in favor of the Bank on Ms. Appley's claims under the UCC and Illinois common law.

## I

### Background

Ms. Appley executed a trust agreement with the First National Bank of Chicago in August 1967 to receive any sums distributed to Ms. Appley from a trust established for her by her parents in 1947. Mr. West, a friend of Ms. Appley's parents, and Ms. Appley's attorney, investment advisor and confidant, became the sole individual trustee of the 1947 trust in June 1973. In August 1973, Mr. West became the sole individual trustee of the 1967 trust. During late June and early July of 1979, Mr. West caused all assets of the 1947 trust to be transferred into the 1967 trust. In April 1980, Mr. West advised Ms. Appley to terminate the 1967 trust; Mr. West had told Ms. Appley that he would manage her investments for her.

Ms. Appley took Mr. West's advice. Securities from the 1967 trust were sold through an account opened by Ms. Appley, on Mr. West's advice, at Dean Witter Reynolds, Inc. Dean Witter thereafter issued checks made payable to Ms. Appley. On the advice of Mr. West, Ms. Appley used the Dean Witter checks to open three bank accounts—two at the National Republic Bank of Chicago and one at the Suburban Trust and Savings Bank of Oak Park (Suburban Trust).[3] Both Ms. Appley and Mr. West were signators on one of the Republic Bank accounts (Stuart West: Special Account). Ms. Appley was the sole signator of the second Republic Bank account (M.A. Ltd. Account). Monthly bank statements and cancelled checks from the two Republic Bank accounts and the Suburban Trust account were sent to the address of Mr. West's law office.

On June 28, 1985, Mr. West pleaded guilty to two counts of mail fraud in violation of 18 U.S.C. § 1341. R. 80, Ex. A at 7, 21. The twenty-count grand jury indictment, of which Mr. West pleaded guilty to Counts I and XII, charged Mr. West with engaging in a scheme to defraud Ms. Appley and her mother, Mary Kochton, of money through false and fraudulent pretenses, representations and promises. The indictment further charged that, as part of the scheme to defraud, Mr. West "fraudulently and wrongfully obtained and converted to his own benefit and use in excess of $575,000 in funds belonging to Mary K. Appley, in violation of his fiduciary duties as an attorney and trustee, and $200,000 in funds belonging to Marie Kochton." *United States v. Stuart West*, No. 84 CR 805, indictment at 2, ¶ 9 (N.D.Ill.1984) [hereinafter Indictment]. The two acts of mail fraud, which were committed in furtherance of the scheme to defraud, involved the mailing of the monthly bank statements and cancelled checks from the Republic Bank/M.A. Ltd. Account and the Suburban Trust account to Mr. West's law office address.

During the June 28, 1985 plea hearing, the government and defense counsel agreed that the minimum amount that Mr. West embezzled from Ms. Appley was $495,000. R. 80, Ex. A at 3, 11–13, 20. At the sentencing hearing, the government and defense counsel reached an agreement according to which the government would submit to the court "its version of the offense which would seek restitution in the amount of $957,000." R. 80, Ex. D at 3. Mr. West concurred in the agreement recommended by his counsel and presented to the court. *Id.* The court agreed that there were two versions of the offense. *Id.* at 4. The government counsel emphasized "that the parties do in essence agree to disagree, and that the purpose in arrival at the agreed-upon sentence was, in part, to obviate the need for an evidentiary hearing with respect to the material differences in events in each of the versions." *Id.* at 4–5. The court sentenced Mr. West to five years

---

**3.** Ms. Appley has settled her claims with Suburban Trust and it is not involved in this appeal.

imprisonment on Count I, two years imprisonment on Count XII, consecutive to Count I, and ordered restitution in the amount of $957,000. *Id.* at 5.

## II

## Claims Against Mr. West

### A. *District Court Proceedings*

In July 1984, Ms. Appley filed suit against Mr. West and Republic Bank. The complaint alleged five claims against Mr. West: 1) Count I—civil RICO; 2) Count II—fraud and deceit; 3) Count III—negligent misrepresentation; 4) Count IV—breach of fiduciary duty; and 5) Count VI—suit for an accounting. In October 1985, after Mr. West had pleaded guilty to the two counts of mail fraud and had been sentenced on those counts, Ms. Appley filed a motion for summary judgment against Mr. West. R. 80. Ms. Appley argued that she was entitled to summary judgment as a matter of law because Mr. West pleaded guilty to the mail fraud counts and was sentenced to pay restitution in the amount of $957,000. R. 80 at ¶ 7. In her summary judgment motion, Ms. Appley requested treble damages of $2,871,000 on Count I (civil RICO). In the alternative, she requested summary judgment in the other common law claims individually in the amount of $957,000. *Id.* The district court granted Ms. Appley's motion for summary judgment. It "granted $957,000 under the common law claims and trebled that amount under Count I to arrive at a total of $2,871,000." R. 136 at 2.

On the motion of Mr. West,[4] the district court vacated its earlier order granting summary judgment. R. 86. It then entered summary judgment in favor of Ms.

Appley in the amount of $957,000 without writing an opinion or specifying the count(s) on which it was granted. *Id.* Thereafter, Ms. Appley filed a motion to reinstate summary judgment in her favor in the amount of $2,871,000. R. 106.[5] The district court granted Ms. Appley's motion and reinstated summary judgment against Mr. West in the amount of $2,871,000 on the civil RICO claim. R. 135.

The district court issued a memorandum opinion with the order reinstating summary judgment on the civil RICO claim. R. 136. The court examined the elements of a civil RICO violation and "[t]he allegations of fact ... established through [Mr. West's] admissions and the doctrine of collateral estoppel," *id.* at 4, to determine "whether these facts conclusively constitute a civil RICO violation," *id.* The court agreed with Ms. Appley that "the established facts of the schemes and the acts of mail fraud from the indictment constitute a 'pattern of racketeering activity' under civil RICO." *Id.* at 5. It determined that the material allegations of the indictment satisfied the requirement under *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), "that there is continuing activity plus a relationship which combine to produce a pattern." R. 136 at 6. The court then stated that the 1967 trust (No. 64306) and the Sage Acceptance Corporation[6] met the definition of an "enterprise" under the RICO statute. R. 136 at 8. The court noted that Ms. Appley's burden is to establish a "person" and an "enterprise" that are distinct legal entities in order to prevail in her civil RICO claim. The court found that Mr. West, "as the 'person liable,' is an entity separate from the Trust." *Id.* at 10. The district court

---

**4.** After summary judgment was entered for Ms. Appley, Mr. West filed a "Motion to Vacate Order Entered October 16, 1985 and for Leave to Respond to Plaintiff's Motion for Summary Judgment." R. 85. He argued that he "was not present or represented by counsel on October 16, 1985 because no notice was received by the defendant or his counsel of plaintiff's pending Motion on said date." R. 85 at ¶ 2.

**5.** In her motion, dated December 4, 1985, Ms. Appley argued that her motion to reinstate summary judgment in her favor in the amount of

$2,871,000 should be granted because, since the court's October 25, 1985 order vacating the original summary judgment order, Mr. West had still not responded to Ms. Appley's motion for summary judgment. R. 106 at ¶ 5; *see supra* note 4.

**6.** The Sage Acceptance Corporation is an Illinois corporation incorporated by Mr. West. Mr. West was the president and director of Sage Acceptance Corporation.

then stated: "It also appears likely that West is an entity separate from the enterprise of the Sage Acceptance Corporation." *Id.* "Without any further knowledge of Sage Acceptance Corporation, the court cannot determine if it qualifies as an enterprise distinct from West." *Id.* at 11.

Next, the court concluded that Ms. Appley had shown that Mr. West maintained an interest in or control over the enterprise of the trust (under section 1962(b)) and that Mr. West conducted or participated in the conduct of an enterprise (under section 1962(c)) based on his admissions that he had defrauded Ms. Appley by becoming trustee of the trust and controlling it by embezzling its funds. The court also determined that Ms. Appley had been injured by Mr. West's acts. Thus, concluded the district court, Ms. Appley "has conclusively shown the defendant's violation of civil RICO." *Id.* Further, the district court concluded that the doctrine of collateral estoppel permitted it "to find that the issue of [Ms. Appley's] losses as a result of [Mr. West's] wrongful acts is established by his concurrence in the Sentencing Report and Judge Moran's sentence based on the Government's version of the facts." R. 136 at 3. Accordingly, the district court trebled the amount of restitution ordered as part of the criminal sentence and entered summary judgment in favor of Ms. Appley in the amount of $2,871,000.

## B. *Discussion*

In this appeal, Mr. West argues that the district court erred in granting Ms. Appley's motion to reinstate summary judgment against him in the amount of $2,871,-000 [7] because 1) the actual amount of Ms. Appley's loss remained a disputed factual issue, and 2) the requisite legal elements for a civil RICO violation were not established.

## I. Summary Judgment Standard

In reviewing the district court's decision to grant a motion for summary judgment,

this court follows the same standard used by the district court—that of Rule 56(c) of the Federal Rules of Civil Procedure. Summary judgment is properly granted only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Hossman v. Spradlin,* 812 F.2d 1019, 1020 (7th Cir. 1987).

## 2. Collateral Estoppel

Recently, in *Gilldorn Sav. Ass'n v. Commerce Sav. Ass'n,* 804 F.2d 390 (7th Cir. 1986), this court provided a succinct and useful exposition of the doctrine of collateral estoppel.

"Collateral estoppel, which is also known as issue preclusion, generally prevents a party from relitigating an issue the party has already litigated and lost." *Ferrell v. Pierce,* 785 F.2d 1372, 1384 (7th Cir.1986). "In general, collateral estoppel precludes relitigation of issues in a subsequent proceeding when: (1) the party against whom the doctrine is asserted was a party to the earlier proceeding; (2) the issue was actually litigated and decided on the merits; (3) the resolution of the particular issue was necessary to the result; and (4) the issues are identical." *Kunzelman v. Thompson,* 799 F.2d 1172, 1176 (7th Cir.1986). Accord *County of Cook v. Midcon Corp.,* 773 F.2d 892, 898 (7th Cir.1985). The policy underlying the doctrine is that "one fair opportunity to litigate an issue is enough." *Bowen v. United States,* 570 F.2d 1311, 1322 (7th Cir.1978). The party asserting estoppel has the burden of establishing which issues were actually determined in his favor in the prior action. *Davis & Cox v. Summa Corp.,* 751 F.2d 1507, 1518 (9th Cir.1985). *See Jones v. City of Alton,* 757 F.2d 878, 885 (7th Cir.1985).

*Id.* at 392–93.

 Collateral estoppel, or issue preclusion, may be applied in civil trials to

---

7. Mr. West does not appeal his liability on the common law claims in Counts II, III, IV and VI of the complaint. He does argue that a question of material fact remains as to the amount of damages due Ms. Appley on those claims.

issues previously determined in a criminal conviction. *Otherson v. Department of Justice,* 711 F.2d 267, 271 (D.C.Cir.1983). Similarly, a guilty plea may be used to establish issue preclusion in a subsequent civil suit. "In this Circuit, a criminal conviction based upon a guilty plea conclusively establishes for purposes of a subsequent civil proceeding that the defendant engaged in the criminal act for which he was convicted." *Nathan v. Tenna Corp.,* 560 F.2d 761, 763 (7th Cir.1977) (applying the law of the Seventh Circuit to decide the effect, in a diversity case under Illinois law, of a guilty plea in a federal district court).

When Mr. West pleaded guilty to the two counts of mail fraud, he effectively pleaded guilty to all of the material facts alleged in the indictment on those two counts. *See LaMagna v. United States,* 646 F.2d 775, 778 (2d Cir.) (citing *McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969)), *cert. denied,* 454 U.S. 898, 102 S.Ct. 399, 70 L.Ed.2d 214 (1981); *Tom v. Twomey,* 430 F.Supp. 160, 162 (N.D.Ill.1977). *See generally* 1 C. Wright, *Federal Practice and Procedure* § 175 at 623–24 (1982). Accordingly, the material facts of the indictment in Counts I and XII may be established in the present action through the use of collateral estoppel. Ms. Appley, however, has the burden of establishing which issues were actually determined in her favor by the guilty plea. *See Davis & Cox v. Summa Corp.,* 751 F.2d 1507, 1518 (9th Cir.1985).

### 3. Damages

■ Ms. Appley argues that, because of the sentencing order requiring restitution in the amount of $975,000 and Mr. West's concurrence in that recommended sentence, *see* R. 80, Ex. D at 3, Mr. West is estopped from denying that Ms. Appley's injury from his actions amounts to $957,-000. We disagree. Mr. West's guilty plea did not include an admission that he had defrauded Ms. Appley of $957,000. The indictment itself alleged that Mr. West defrauded Ms. Appley of $575,000. Indictment at 2, ¶ 9. Indeed, for the purpose of establishing a fact basis for the plea, the parties agreed at the plea hearing that the

minimum amount that Mr. West embezzled from Ms. Appley was $495,000. R. 80, Ex. A at 3, 11–13, 20.

At the sentencing hearing, over three months after Mr. West's guilty plea was accepted by the court, the government submitted, and the court accepted, its version of the offense. In accordance with the government's version of the offense, Mr. West was ordered to pay restitution in the amount of $957,000. We cannot say, after reviewing the transcripts of the plea hearing and the sentencing hearing, that the issue of the amount of Ms. Appley's injury from Mr. West's acts was actually litigated and decided on the merits and that the amount of the injury was necessary to the guilty plea. Collateral estoppel should not be applied when to do so would work an unfairness on the party to be bound. *Otherson,* 711 F.2d at 273. "Critical to the application of collateral estoppel is the guarantee that the party sought to be estopped had the opportunity and the incentive to litigate the issue aggressively." *Kunzelman v. Thompson,* 799 F.2d 1172, 1177 (7th Cir.1986). Here, the record shows that, at the sentencing hearing, there was no litigation of the amount of restitution. Counsel for the government stated: "I just want to make clear for the record that the parties do in essence agree to disagree, and that the purpose in arrival at the agreed-upon sentence was, in part, to obviate the need for an evidentiary hearing with respect to the material differences in events in each of the versions." R. 80, Ex. D at 4–5. It is clear that there was little incentive to litigate the issue aggressively at the sentencing hearing.

Because the amount of restitution was not a material fact of the indictment on which the guilty plea was based, because the issue of the amount of Ms. Appley's injury was not litigated, because Ms. Appley failed in her burden of establishing that the amount of injury was established by the guilty plea, and finally, because, under the facts of this case, the application of preclusion would be unfair, we hold that the district court erred in applying collateral estoppel to grant summary judgment

in favor of Ms. Appley in the amount of $2,871,000. An unresolved issue of material fact remains as to the amount in which Ms. Appley was injured by Mr. West's acts.

### 4. RICO Elements

As we have pointed out, collateral estoppel may be used to establish the material facts of the indictment in the two counts of mail fraud to which Mr. West pleaded guilty. Whether those facts constitute a civil RICO violation, however, is a separate inquiry. To establish a civil RICO violation, Ms. Appley must establish, by a preponderance of the evidence, that Mr. West engaged in a "pattern of racketeering activity" to acquire or maintain an interest or control over an "enterprise," 18 U.S.C. § 1962(b), or that he conducted or participated in the conduct of the affairs of an "enterprise" through a "pattern of racketeering," 18 U.S.C. § 1962(c).

### a. *"pattern of racketeering activity"*

A " 'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after [Oct. 15, 1970] and the last of which occurred within ten years ... after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). Mail fraud is a "racketeering activity." 18 U.S.C. § 1961(1). Therefore, whether the guilty plea establishes a "pattern" is the focus of this inquiry.

In *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985), the Supreme Court noted that, while a "pattern" requires at least two acts of racketeering, "pattern" does not *mean* two such acts. "The implication is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a 'pattern.' The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern." *Id.*

The concept of "pattern" as an element of a RICO claim has been the subject of many post-*Sedima* cases in this circuit. *See, e.g., Marshall & Ilsley Trust Co. v. Pate,* 819 F.2d 806 (7th Cir.1987); *Skycom Corp. v. Telstar Corp.,* 813 F.2d 810 (7th Cir.1987); *Marks v. Pannell Kerr Forster,* 811 F.2d 1108 (7th Cir.1987); *Elliott v. Chicago Motor Club Ins.,* 809 F.2d 347 (7th Cir.1986); *Morgan v. Bank of Waukegan,* 804 F.2d 970 (7th Cir.1986); *Lipin Enters., Inc. v. Lee,* 803 F.2d 322 (7th Cir.1986).

This circuit has established that the existence of a "pattern" as required by RICO is a fact-specific question encompassing many relevant factors. The racketeering activities involved must reveal some "continuity"—i.e., activities continuing over time or in different places—as well as some "relationship" among activities—i.e., activities adding up to coordinated action.

*Marshall & Ilsley,* 819 F.2d at 809–10 (citations omitted). This court has also held that a "pattern" of racketeering "means predicate acts sufficiently separate in time that they may be viewed as separate transactions." *Skycom,* 813 F.2d at 818. "Relevant factors include the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries." *Morgan,* 804 F.2d at 975.

Here, the predicate acts are two acts of mail fraud in furtherance of a scheme to defraud that is detailed in Mr. West's criminal indictment. Indictment at 1–6, ¶¶ 1–35. The indictment alleged a scheme to defraud Ms. Appley and her mother, Mrs. Kochton. *Id.* at 2, ¶ 8. Both counts of mail fraud involved Mr. West's causing the monthly bank statements and cancelled checks from two of Ms. Appley's bank accounts to be mailed to Mr. West's law office address. One act of mail fraud occurred on or about July 1, 1980; the other act occurred on or about November 1, 1980. The acts of mail fraud show the necessary "continuity," yet they are sufficiently separate in time to constitute separate transactions. While both predicate acts were part of the same scheme to defraud, this court has previously explained that "the mere fact that the predicate acts relate to the same overall scheme or involve the same victim does not

mean that the acts automatically fail to satisfy the pattern requirement." *Morgan*, 804 F.2d at 975–76. Moreover, each act of mail fraud caused a separate injury—each served to conceal the conversion of funds from a separate bank account belonging to Ms. Appley.

This case is unlike *Lipin* in which twelve separate acts of mail fraud were held not to constitute a "pattern of racketeering activity." In *Lipin*, we stated:

> Lipin's complaint alleges racketeering acts all designed to defraud one victim, Lipin, on one occasion, the sale of Rifco. Lipin cannot allege that the defendants defrauded another victim with similar racketeering activity and cannot allege that Lipin has been defrauded more than once by the defendants through similar racketeering acts.

803 F.2d at 324. The present case is also distinguishable from *Marks*: "As in *Lipin*, Marks did not allege defendants defrauded other victims with similar racketeering activity and did not allege he has been defrauded more than once by the defendants through similar racketeering acts." 811 F.2d at 1111. Also, in *Skycom*, the court held that allegations of fraudulent misrepresentations resulting in a single contract and the transfer of a single business opportunity did not constitute a "pattern." Here, Mr. West's guilty plea has established that the two predicate acts were designed to defraud Ms. Appley, not once, but twice, by concealing Mr. West's conversion of her funds from two separate bank accounts. This case is more analogous to *Illinois Dep't of Revenue v. Phillips*, 771 F.2d 312 (7th Cir.1985). In *Phillips*, the court held that allegations that the defendant mailed nine separate fraudulent state sales tax returns to the state over a nine-month period were sufficient to allege a "pattern of racketeering." As this court later explained in *Morgan:* "These mailings were clearly distinct transactions ongoing over a period of time: each tax return was a separate lie and resulted in a separate underpayment, independent of the other lies and underpayments." 804 F.2d at 976. Accordingly, we hold that the two acts of mail fraud constitute a "pattern" for the purpose of establishing the "pattern of racketeering activity" element of a RICO violation.

### b. "enterprise"

■ Ms. Appley must also show that, through the "pattern of racketeering activity," Mr. West acquired or maintained an interest in or control of an "enterprise" that engages in or affects interstate or foreign commerce or that he conducted or participated in the conduct of the affairs of an "enterprise" that engages in or affects interstate or foreign commerce. The district court held that the 1967 trust satisfied the "enterprise" requirement. It also reasoned that, because "[Mr.] West has admitted to his embezzlement and administration of the Trust's funds[,] [h]is acts plainly qualify as acts of conducting the affairs of the enterprise." R. 136 at 11.

We do not believe that, on this record, the district court could resolve definitively the question of whether an enterprise existed. The record raises a substantial question as to whether the 1967 trust remained in existence at the time the two predicate acts relied upon by the district court took place. The material before the district court indicates that Mr. West caused Ms. Appley to terminate the trust on or about April 29, 1980. Yet, the two predicate acts to which Mr. West pleaded guilty and that establish the "pattern of racketeering activity" occurred in July 1980 and November 1980. If the trust (the enterprise) was not in existence at the time of the two predicate acts (the "pattern of racketeering activity"), Mr. West could not have, through that pattern of racketeering activity, either acquired or maintained an interest or control over, or conducted the affairs of the enterprise.

If further evidence, of a far more precise nature than that now before us, established that the trust was in existence at the time the predicate acts took place, the task of the district court would still be undone. To establish a RICO violation, it would be necessary for the plaintiff to demonstrate that, at the time the predicate acts took place, Mr. West and the trust still main-

tained separate identities. *See United States v. DiCaro*, 772 F.2d 1314, 1319 (7th Cir.1985). This inquiry may well require further examination of the nature of the remaining trust res at the time of the predicate acts and the sort of control Mr. West exercised over that res at the time. It would certainly be premature, on this record, for us to express a view on this issue.

Nor can we say that Ms. Appley has established that the Sage Acceptance Corporation can serve as the necessary "enterprise." The district court specified that "[w]ithout any further knowledge of Sage Acceptance Corporation, the court cannot determine if it qualifies as an enterprise distinct from [Mr.] West." R. 136 at 11. We add that we have found no evidence in the record that the Sage Acceptance Corporation engages in or affects interstate or foreign commerce as required by 18 U.S.C. §§ 1962(b), 1962(c).

### C. Conclusion

We hold that summary judgment on the issue of damages was improperly granted because questions of material fact remain to be resolved as to the injury suffered by Ms. Appley as a result of Mr. West's acts. Similarly, we hold that summary judgment was improper as to Mr. West's liability on the RICO claim because a question of material fact remains regarding the existence of the necessary "enterprise."

### III

### Claims Against Republic Bank

### A. District Court Proceedings

In her amended complaint, R. 49, Ms. Appley alleged two claims against Republic Bank. In Count V, she alleged that Republic Bank had wrongfully converted her funds from the two accounts she maintained at the bank—the Stuart West: Special Account and the M.A. Ltd. Account—by "wrongfully and improperly permitt[ing] Stuart West to cash numerous checks and make repeated withdrawals from [the accounts] by honoring checks drawn on those accounts with forged endorsements of the plaintiff or no endorsements at all." R. 49 at 21, ¶ 21. In Count VII, Ms. Appley alleged that Republic Bank 1) knew or should have known that Mr. West was serving as her fiduciary, *id.* at 24, ¶ 20; 2) knew or should have known that Mr. West was wrongfully and improperly causing numerous and repeated checks to be cashed and withdrawals to be made from the accounts in breach of his fiduciary duties, *id.* at 25, ¶ 22; and 3) "negligently, wrongfully and improperly permitted Stuart West to cash these checks and make numerous and repeated withdrawals, with actual or constructive knowledge of Stuart West's breach of fiduciary obligations, with actual or constructive knowledge that the Republic Bank's actions amounted to bad faith, and without obtaining the authorization and consent of the plaintiff," *id.* at 25, ¶ 23.

Republic Bank filed a motion to dismiss Counts V and VII. The district court granted the motion of Republic Bank and dismissed both claims. The district court noted that, in these two counts, Ms. Appley had advanced several legal theories, both statutory and under the common law. The statutory claim, it stated, was pursuant to the UCC § 3–419 for breach of warranty by accepting a check having a forged endorsement. *See* Ill.Ann.Stat. ch. 26, ¶ 3–419. The four common law claims are negligence, conversion, fraud and civil conspiracy. The court granted summary judgment on the UCC claim because it was not brought within the three-year statute of limitations provided by UCC § 4–406(4). *See* Ill.Ann.Stat. ch. 26, ¶ 4–406(4). The court then dismissed all of the common law causes of action for failure to state a claim on which relief could be granted. It held that, under the claims asserted, no common law conversion action exists apart from the UCC because § 3–419 codifies the type of conversion Ms. Appley alleged. On the negligence claim, the court held that Ms. Appley "failed to plead facts showing that the Bank was negligent or potentially negligent." R. 66 at 11. Finally, the court held that "[t]he actual language of the complaint ... is devoid of any allegations

of fraud or conspiracy on the part of the Bank." *Id.* [8]

### B. *Discussion*

In her appeal, Ms. Appley argues that she sufficiently alleged a cause of action against Republic Bank for negligence amounting to bad faith (negligence/bad faith) that is not displaced by UCC § 3–419 and that is not governed by the statute of limitations in UCC § 4–406. She states: "[Section] 4–406 is inapplicable because plaintiff's negligence/bad faith action goes beyond Republic's payment of checks containing unauthorized endorsements. Plaintiff alleges a breach of a broader duty Republic owed plaintiff to not knowingly assist or permit misappropriation of plaintiff's funds by West." Appellant's (Appley) Br. at 16. Notably, in this appeal, Ms. Appley does not argue that the district court erred in dismissing her claims under the UCC or under the common law for conversion, fraud or civil conspiracy. Arguments not made in the initial brief before this court are waived. *Andree v. Ashland County*, 818 F.2d 1306, 1310 n. 5 (7th Cir.1987); *Manbourne, Inc. v. Conrad*, 796 F.2d 884, 888 (7th Cir.1986). Therefore, Ms. Appley has waived her UCC, conversion, fraud and civil conspiracy arguments.

In reviewing a dismissal for failure to state a claim under Fed.R.Civ.P. 12(b)(6), the plaintiff's allegations must be accepted as true. "A complaint can be dismissed for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with plaintiffs' allegations." *Morgan*, 804 F.2d at 973. The complaint should not be dismissed because the plaintiff has not set forth a proper legal theory. Rather, this court should examine the complaint to determine if there is any legal theory upon which relief can be granted.

Count VII is the focus of our inquiry.[9] Count VII alleges that Republic Bank knew or should have known that Mr. West was Ms. Appley's fiduciary and that Mr. West's transactions with the bank involving Ms. Appley's two accounts were in breach of Mr. West's fiduciary obligations. The count alleges both negligence and bad faith on the part of Republic Bank by permitting Mr. West to both cash checks and make repeated withdrawals from the accounts. Count VII thus alleges more than conversion on a forged endorsement, which is codified in Ill.Ann.Stat. ch. 26, ¶ 3–419.[10]

The case law indicates that Illinois recognizes a cause of action against a bank that has actual knowledge of a fiduciary's misappropriation of funds or that has knowledge of facts that render its failure to inquire bad faith. *See Go-Tane Serv. Stations, Inc. v. Sharp*, 78 Ill.App.3d 785, 33 Ill.Dec. 916, 397 N.E.2d 249 (1979); *St. Stephen's Evangelical Lutheran Church v. Seaway Nat'l Bank*, 38 Ill.App.3d 1021, 350 N.E.2d 128, 130–31 (1976) (citing *Maryland Casualty Co. v. Bank of Charlotte*, 340 F.2d 550 (4th Cir.1965)). The cause of action arose at common law to apply to those situations in which a third party deals with a known fiduciary who is acting in breach of his fiduciary obligations to the principal. "At common law a payee was often held liable to the principal if it negligently assisted a fiduciary in misappropriating the principal's funds." *Maryland Casualty*, 340 F.2d at 553. The Uniform

---

**8.** Ms. Appley moved the court to vacate and reconsider its order, *see* R. 66, dismissing Counts V and VII of her amended complaint. In the alternative, she filed a motion for leave to file a second amended complaint with amended Counts V and VII. The district court denied both motions. R. 109.

**9.** Count V asserts a claim for conversion on a forged endorsement that we need not address because, as noted above, Ms. Appley's arguments on conversion, either under the UCC or the common law, have been waived.

**10.** The district court believed that the allegations of the complaint were not sufficiently specific to conform to the requirement of Fed.R. Civ.P. 9(b) that allegations of fraud be stated "with particularity." We respectfully disagree. Our own examination of the complaint convinces us that the allegations are sufficiently particular to comply with this requirement. The allegations here are certainly far more specific than those contained in the complaint reviewed in *Skycom Corp. v. Telstar Corp.*, 813 F.2d 810, 818 (7th Cir.1987).

Fiduciaries Act (UFA or Act)[11] altered the common law somewhat. "The purpose of the Act is to facilitate the fiduciary's performance of his responsibilities by limiting the liability of those who deal with him," *Bellflower AG Serv., Inc. v. First Nat'l Bank & Trust Co.*, 130 Ill.App.3d 80, 85 Ill.Dec. 399, 403, 473 N.E.2d 998, 1002 (1985), and "to cover situations which arise when one person honestly deals with another knowing him to be a fiduciary," *Johnson v. Citizens Nat'l Bank*, 30 Ill.App.3d 1066, 334 N.E.2d 295, 298 (1975). The UFA relieves the bank of liability for negligence, but allows a cause of action when the bank has actual knowledge of the fiduciary's misappropriation of the principal's funds or when the bank has knowledge of sufficient facts that its action in paying the checks amounts to bad faith. *Maryland Casualty*, 340 F.2d at 553; *see* Ill.Ann.Stat. ch. 17, ¶¶ 2004–2009. In determining whether the bank acted with bad faith, "courts have asked whether it was 'commercially' unjustifiable for the payee to disregard and refuse to learn facts readily available." 340 F.2d at 554. "At some point, obvious circumstances become so cogent that it is 'bad faith' to remain passive." *Id.* The UFA did not create the cause of action. Rather, the UFA is a defense to such an action unless the bank has actual knowledge that the fiduciary is breaching his fiduciary obligations or the bank acts with bad faith.

Here, Ms. Appley, the principal, has stated a cause of action against Republic Bank for facilitating Mr. West's, the fiduciary's, scheme to defraud Ms. Appley. She has alleged in her complaint that Republic Bank knew that Mr. West was her fiduciary and that it knew that he was breaching his fiduciary obligations. She also alleged that Republic Bank acted with bad faith. The UFA is a defense to Ms. Appley's allegation that the bank acted negligently. However, if Ms. Appley can prove that the bank acted with bad faith or had actual knowledge of Mr. West's misappropriation of her funds, she may be able to recover.

*See Johnson*, 334 N.E.2d at 299. Because Ms. Appley has alleged bad faith and actual knowledge in her complaint, there is a legal theory on which she possibly can recover. She should be given the opportunity to proceed with discovery and to test her evidence before the trier of fact. However, we emphasize that, by our holding today, we make no assessment of the merits of her claim.

█ The district court held that the UCC § 4–406(4) statute of limitations applied to both the UCC and the negligence causes of action. "The negligence action at common law may not be used as a means to avoid the codified period of limitations." R. 66 at 11. The court did not consider the theory under Count VII that when the bank knows that a person is a fiduciary, if the bank has actual knowledge that the fiduciary is breaching his fiduciary duties or if the bank acts with bad faith, it is liable to the principal. We believe that this cause of action is separate enough from a cause of action under the UCC that the statute of limitations period in UCC § 4–406(4) does not apply. This cause of action is not under a warranty theory of liability. Therefore, the legislative design to put a short time limit on the cause of action does not apply. We agree with the court in *Sun 'N Sand, Inc. v. United Cal. Bank*, 21 Cal.3d 671, 148 Cal.Rptr. 329, 582 P.2d 920 (1978), when, in addressing the argument that a common law negligence claim was barred by the limitations period of UCC § 4–406, it stated:

> Although superficially appealing, this argument is premised on a misunderstanding of subdivision (4) and the intended function of its preclusion.... This statute of limitations ... applies only to actions seeking to establish *warranty* liability.... Because liability in a warranty action is virtually absolute, the Legislature's decision to cut short the otherwise applicable time limitation period ... reflects a reasonable policy choice.... Very different considerations are implicated, however, when an action is prosecuted on a theory of negligence.

11. The Uniform Fiduciaries Act has been adopted in Illinois and is codified in Ill.Ann. Stat. ch. 17, ¶ 2001 *et seq.*

*Id.* 148 Cal.Rptr. at 347–48, 582 P.2d at 938–39 (emphasis in original); *see also Far West Citrus, Inc. v. Bank of America,* 91 Cal.App.3d 913, 154 Cal.Rptr. 464, 466–67 (1979). *But see Brighton, Inc. v. Colonial First Nat'l Bank,* 176 N.J.Super. 101, 422 A.2d 433, 438 (1980) (distinguishing *Sun 'N Sand* on other grounds), *aff'd per curiam,* 86 N.J. 259, 430 A.2d 902 (1981). The *Sun 'N Sand* court concluded that section 4–406 "applies only to actions based on warranties set forth in the California Uniform Commercial Code." 148 Cal. Rptr. at 348, 582 P.2d at 939. Ms. Appley's cause of action for the "actual knowledge" or "bad faith" exceptions to the UFA is not merely an attempt to avoid the UCC cause of action. It encompasses much more than an action based on an unauthorized signature or endorsement or alteration on an item. Moreover, because of Ms. Appley's allegation that Republic Bank acted with bad faith, UCC § 4–406(4) does not apply. Section 4–406(1) requires that the items must have been "paid in good faith" for the period of limitation to run. *Kiernan v. Union Bank,* 55 Cal. App.3d 111, 127 Cal.Rptr. 441, 443 (1976). Accordingly, we conclude that Ms. Appley's action against Republic Bank is not time-barred under UCC § 4–406(4).[12]

### Conclusion

For the foregoing reasons, the judgment of the district court granting summary judgment in favor of Ms. Appley in the amount of $2,871,000 on her claims against Mr. West is reversed. The dismissal of Count VII of Ms. Appley's complaint against Republic Bank is also reversed. The case is remanded to the district court for further proceedings consistent with this opinion.

In 86–1970, Mr. West shall recover his costs. In 86–1070, Ms. Appley shall recover her costs.

REVERSED AND REMANDED.

**12.** The defendant, Republic Bank, has only raised a § 4–406(4) statute of limitations defense before this court. Implicitly, Republic Bank has waived any other statute of limitations

defense; thus, we need not decide which statute of limitations applied under the circumstances of this case.