**HINSDALE WOMEN'S CLINIC, S.C., et al., Plaintiffs,**

v.

**WOMEN'S HEALTH CARE OF HINSDALE, et al., Defendants.**

No. 87 C 5746.

United States District Court, N.D. Illinois, E.D.

June 20, 1988.

---

Donald C. Shine, Gregory C. Ward, Nisen & Elliott, Chicago, Ill., for plaintiffs.

Daniel R. Formeller, Francis Spina, Tressler, Soderstrom, Maloney & Priess, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

The Hinsdale Women's Clinic ("the Clinic") and E.J. Justema, M.D., allege violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68 and various pendent state law claims. Defendants are Women's Health Care of Hinsdale ("Health Care"), Donald

S. Amsler, M.D., Lanny F. Wilson, M.D., and Margaret M. Pfister, M.D. Defendants have joined in a motion to dismiss the second amended complaint. For the following reasons, the motion is granted in part and denied in part.

Upon a motion to dismiss under Fed.R. Civ.P. 12(b)(6), plaintiffs' allegations must be accepted as true. *Morgan v. Bank of Waukegan*, 804 F.2d 970, 973 (7th Cir. 1986). The amended complaint contains the following relevant facts. Dr. Justema and Dr. Amsler each were fifty percent shareholders in the Clinic. They also were staff physicians at the Clinic, specializing in obstetrics and gynecology. Both physicians were directors of the Clinic as well as employees. On June 30, 1986, Dr. Amsler resigned as an employee. On July 3, 1986, Dr. Amsler, and Dr. Justema, individually and on behalf of the Clinic, executed a "Settlement Agreement." Second Amended Complaint, Exhibit 1. Pursuant to the agreement, Dr. Amsler resigned as an officer and director of the Clinic, upon certain conditions. *Id.* at 1, ¶ (d). In June or July, 1986, Dr. Amsler formed Health Care with Drs. Wilson and Pfister. Health Care subsequently began providing medical services to a number of patients who originally received services at the Clinic. The Settlement Agreement addressed billing of the patients who transferred from the Clinic to Health Care. The parties agreed to an allocation of the value of the Clinic's obstetrical services to those patients in a schedule specifying the patient and the amount due. Second Amended Complaint, at 5, ¶ 16. The parties to the agreement also provided that the Clinic would bill the patients listed in the schedule for the specified amount. *Id.* at 6, ¶ 17. While receiving medical services at the Clinic, these patients had been quoted a $1,350 fee for all services incident to a normal delivery. *Id.* at 4, ¶ 13. Dr. Amsler agreed that when he billed former Clinic patients, the invoices would reflect a credit for the amounts shown in the settlement agreement schedule. *Id.* at 6, ¶ 17. Further, Dr. Amsler agreed to deliver to the Clinic any payments due it that were received by any of the defendants.

Plaintiffs allege that Dr. Amsler, aided by Drs. Wilson and Pfister, caused Health Care to advise the Clinic's former patients that the Clinic had billed them for amounts in excess of an amount Health Care deemed reasonable. Further, plaintiffs claim that defendants advised these patients not to pay the full amounts charged by the Clinic and failed to properly credit patients for those amounts specified in the settlement agreement schedule. Plaintiffs also claim that defendants have not paid fees received by Health Care but due to the Clinic under the agreement.

*Count I*

Plaintiffs allege that defendants violated Section 1962(c)[1] of RICO by intentionally preventing payment of funds to plaintiffs and diverting those amounts to defendants. According to plaintiffs, defendants furthered their scheme to defraud plaintiffs through use of the United States mails, in violation of 18 U.S.C. § 1341 (the "mail fraud statute").[2] Plaintiffs claim that:

> On various dates since July, 1986, the defendants, Amsler, Wilson, Pfister and Health Care have sent to the former patients of the Clinic statements of account through the United States mails.

---

**1.** Section 1962(c) of RICO provides in pertinent part:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity....

**2.** 18 U.S.C. § 1341 provides in pertinent part:
Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, ... for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing....

... In addition, at various times since July 3, 1987, (sic) including but not limited to, January 12, 1987, Health Care has sent to the Clinic checks through the United States mails purporting to be payments of the agreed amounts. Also, some of the affected patients have been informed at various times in person and over the telephone that the accounts received from the Clinic are incorrect, have been told to pay arbitrary amounts and have been told not to pay the Clinic accounts. These misrepresentations have been made to such patients by the defendants through the U.S. mails on dates presently unknown.

Second Amended Complaint, Count I, ¶ 32.

■ Defendants attack the sufficiency of the Section 1962(c) claim on several grounds. Initially, they assert that plaintiffs have failed to plead a pattern of racketeering activity. Defendants assert that their alleged acts merely encompass a single scheme to defraud a single victim, and therefore are inadequate for purposes of establishing a pattern. *See Marks v. Pannell Kerr Forster*, 811 F.2d 1108, 1111–1112 (7th Cir.1987). Defendants assert that the alleged misrepresentations all concerned one transaction, the dissolution of Dr. Amsler's relationship with the Clinic.

The Seventh Circuit has carved out an exception to the single scheme prohibition:

we have recognized on rare occasions that "the mere fact that the predicate acts relate to only one overall scheme does not mean that the acts automatically fail to satisfy the pattern requirement"....

*Jones v. Lampe*, 845 F.2d 755, 758 (7th Cir.1988), *citing Appley v. West*, 832 F.2d 1021 at 1027–28 (7th Cir.1987); *accord Liquid Air Corp. v. Rogers*, 834 F.2d 1297, 1304 (7th Cir.1987). In *Appley*, a trustee embezzled funds from two bank accounts belonging to a trust beneficiary, who alleged the occurrence of mail fraud in two mailings of monthly bank statements and cancelled checks from the banks to the defendant. The court found existence of a pattern in that each mailing caused a separate injury to the plaintiff by concealing

from her the conversion of her funds. *Appley, supra*, 832 F.2d at 1028. In *Liquid Air*, the defendants executed a scheme to defraud the plaintiff by falsifying shipping orders to document the return to plaintiff of its leased goods. By falsely claiming that the goods were returned, defendants continued to use the goods without paying rental fees or the replacement value. The court found that the 19 mailings of falsified shipping orders each inflicted a distinct economic injury upon the plaintiff. *Liquid Air, supra*, 834 F.2d at 1304–05. Therefore, the repeated nature of the injury constituted the requisite RICO pattern. *Id.* at 1305.

The facts here parallel *Appley* and *Liquid Air*. Each time a former Clinic patient, at the urging of defendants, paid only a portion of the amount billed, it represented a new injury to plaintiffs. Moreover,

the predicate acts must be ongoing over an identified period of time so that they can fairly be viewed as constituting separate transactions....

*Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir.1986). Plaintiff fulfills this requirement by alleging that over a period of at least seven months, patients made reduced payments to the Clinic. Second Amended Complaint, Count I, ¶ 32.

In *Jones*, the Seventh Circuit recently declined to follow *Appley* or *Liquid Air* in dismissing a RICO claim that dealt with a single scheme concerning one loan transaction and resulting in only one distinct injury, wrongful conversion of loan proceeds. However, the repeated infliction of separate economic injuries upon the Clinic distinguishes this case from *Jones*. *Jones, supra*, at 758.

■ Additionally, defendants contend that the RICO claims must fall because plaintiffs plead the existence of only one victim, the Clinic. According to defendants, Dr. Justema is not a victim for RICO purposes because he suffered no injury distinct from the Clinic's. Yet, whether the scheme had one or more victims is not determinative of the existence of a RICO violation; it is merely one factor for the

court to consider. *Morgan, supra,* 804 F.2d at 975–76. Like *Appley* and *Liquid Air,* this RICO claim should survive a motion to dismiss even in the absence of multiple victims. Therefore, the court need not reach the issue of Dr. Justema's status as a distinct RICO victim.

■ Alternatively, defendants claim that the RICO allegations are not pleaded with sufficient particularity. A complaint stating a RICO claim based upon predicate acts of mail fraud must particularize the fraudulent circumstances. Fed.R.Civ.P. 9(b). *Ghouth v. Conticommodity Services, Inc.,* 642 F.Supp. 1325, 1331–32 (N.D.Ill.1986). The plaintiff must allege *"who* (i.e., which defendant) caused *what* to be mailed *when,* and *how* that mailing furthered the fraudulent scheme." *Id.* (emphasis in original; citation omitted).

■ In support of their mail fraud claims, plaintiffs attach to the second amended complaint numerous letters from patients, informing the Clinic that according to Health Care, Dr. Pfister or Dr. Wilson, the patients did not owe the Clinic as much as the latter billed. Second Amended Complaint, Exhibits 2, 3, 5–12. Checks for the reduced charges were enclosed in some letters. *Id.,* Exhibits 2, 3, 6, 11, 12. With the exception of Exhibit 4, none of the exhibits is a letter or invoice from the defendants to any patient or plaintiffs. However, the court cannot infer any misrepresentation from that exhibit, which merely conveyed to some patients a fee schedule utilized by the defendant doctors when they worked at the Clinic. At issue here is whether the remaining exhibits sufficiently evidence claims of mail fraud against defendants.

Mailings between innocent parties can support a mail fraud claim. *United States v. Bonansinga,* 773 F.2d 166, 168 (7th Cir. 1985). The Seventh Circuit stated its test for determining when a mailing not made by a defendant falls under the mail fraud statute in *United States v. Galloway,* 664 F.2d 161 (7th Cir.1981). The *Galloway* defendant was charged with a scheme to defraud automobile purchasers by setting back odometer readings. The mailings

that supported the mail fraud indictment occurred when the dealers to whom defendant sold the automobiles applied for title on behalf of purchasers by mailing documents to a state agency. The *Galloway* court determined that the mailings came within the scheme because the fraud was not complete until the cars had been resold to retail customers, and the mailing of title documents was integral to the sale. *Id.* at 163. Further, the court found that the defendant caused the mailings in that he could reasonably foresee their occurrence, thereby meeting the causation requirement of the mail fraud statute. *Id.* at 165 n. 6 (citation omitted); *accord Bonansinga, supra,* 773 F.2d at 168.

The facts here parallel *Galloway.* Defendants' alleged scheme of diverting payments from the Clinic to Health Care could not be completed until patients paid the Clinic lesser amounts than billed, ensuring that a greater proportion of the overall fee would be paid to Health Care. In one letter, a patient expressly stated that the combined bills from the Clinic and Health Care exceeded the initial quote for services and that Health Care's bill would be paid in full, whereas the Clinic's statement would be adjusted. Second Amended Complaint, Exhibit 5. For purposes of this motion, the court will infer that the patients whose letters comprised other exhibits paid proportionally higher fees to Health Care when they reduced the amount paid to the Clinic. It is also reasonable to infer that defendants would foresee these mailings. Therefore, the court finds that plaintiffs sufficiently identified the nature of the mailed matter, when the mailings occurred, and the impact of the correspondence on the scheme.

■ The only remaining question is whether plaintiffs sufficiently pleaded facts regarding *who* caused the mailings. Most of the letters reflect that either Health Care, Dr. Pfister, or Dr. Wilson informed patients that they owed the Clinic less than was billed. Second Amended Complaint, Exhibits 2, 3, 5–13. Accordingly, plaintiffs have shown causation as to these defendants.

As for implication of Dr. Amsler in the scheme, the alleged fraudulent acts need not be attributed to certain defendants if the complaint sufficiently describes the acts and provides defendants with sufficient information to answer the allegations. *Banowitz v. State Exchange Bank*, 600 F.Supp. 1466, 1469 (N.D.Ill.1985). It is unnecessary to allege further details that are in the exclusive possession of defendants. *Id.* (citations omitted). Because defendants allegedly executed their scheme by contacting patients rather than plaintiffs, the latter cannot be expected to have further details of the fraud prior to discovery. The court finds that plaintiffs sufficiently apprised all defendants of their allegations and that the second amended complaint satisfies Fed.R.Civ.P. 9(b).

■ Defendants also attack Count I for failure to allege an effect upon interstate commerce. However, mailings need not cross state lines in order to bring conduct within the mail fraud statute. *United States v. Cady*, 567 F.2d 771, 776 n. 7 (8th Cir.1977). Further, the more pertinent inquiry is whether Health Care engaged in, or had activities which affect, interstate commerce. 18 U.S.C. § 1962(c). Plaintiffs claim that "Health Care constitutes an enterprise engaged in or affecting interstate commerce...." Second Amended Complaint, Count I, ¶ 28. This element is adequately alleged for purposes of a Rule 12(b)(6) motion. *Dunham v. Independence Bank of Chicago*, 629 F.Supp. 983, 990 (allegation that defendant is "engaged in interstate commerce" is sufficient).

For the above reasons, the motion to dismiss Count I is denied.

*Count II*

■ Plaintiffs also allege a violation of 18 U.S.C. § 1962(a).[3] This claim requires "the receipt of income from a pattern of racketeering, and the use of that income in the operation of an enterprise." *Morgan v. Bank of Waukegan, supra*, 804 F.2d at 972–73. An effect upon interstate commerce also must be alleged. 18 U.S.C. § 1962(a). Defendants assert that plaintiffs have failed to plead any of these elements. However, plaintiffs have established the existence of a pattern of racketeering and an effect upon interstate commerce for purposes of this motion. Further, plaintiffs' allegation that defendants encouraged patients to pay the Clinic less than they were billed, which resulted in correspondingly higher payments to Health Care, adequately alleges that defendants used the income in their own operation. *Dunham, supra*, 629 F.Supp. at 990.

Defendants' motion to dismiss Count II is therefore denied.

*Pendent Claims*

Because the federal claims survive dismissal, the pendent state law claims must be addressed. Illinois law applies to these allegations under the rules of diversity jurisdiction and the choice of law provision of the Settlement Agreement. Second Amended Complaint, Exhibit 1, ¶ 13. *Apperson v. Ampad Corp.*, 641 F.Supp. 747, 750 (N.D.Ill.1986).

■ In Count III, plaintiffs assert a cause of action for intentional interference with contractual relations, and Count IV is a breach of contract claim. Plaintiffs name Drs. Pfister and Wilson as defendants in Count III, and the court finds as a matter of law that the remaining defendants have no liability on this claim. Because Dr. Amsler was the only defendant to be a party to the Settlement Agreement, only he may be liable for its alleged breach in Count IV.

Defendants' only other argument for dismissal of Counts III and IV is that the requests for equitable relief in these claims are improper. In both counts, plaintiffs

**3.** Section 1962(a) of RICO provides in pertinent part:
(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

demand an escrow account, an accounting, and specific performance of the Settlement Agreement. Similar relief is requested in Count V, stating a cause of action for an accounting.

The court finds that equitable remedies are not available under the pendent claims. Rather, it is apparent that plaintiffs have an adequate remedy at law, based upon the calculations contained in the settlement agreement schedule. *See Radial Lip Machine, Inc. v. International Carbide Corp.*, 76 F.R.D. 224, 228 (N.D.Ill. 1977), *citing Dairy Queen v. Wood*, 369 U.S. 469, 478, 82 S.Ct. 894, 900, 8 L.Ed.2d 44 (1962) (equitable remedies are available only in the absence of an adequate remedy at law). An equitable accounting is proper when the accounts between the parties are so complicated that a special master and jury cannot adequately assess damages. *Id.* This is not the case here.

For the foregoing reasons, defendants' motion to dismiss Count V is granted. The claims for equitable relief in Counts III and IV are stricken. The motion to dismiss is denied in all other respects.