**P.M.F. SERVICES, INC. and Richard Rueth, Plaintiffs,**

v.

**Daniel J. GRADY, Lynn Grady, Mount Greenwood Bank, and The Northern Trust Company, Defendants.**

No. 87 C 9113.

United States District Court, N.D. Illinois, E.D.

March 10, 1988.

Michael R. Collins, Harold E. Collins & Assocs., Ltd., Chicago, Ill., for plaintiffs.

Denise M. Higgins, Burke & Burke, Ltd., Chicago, Ill., for Mt. Greenwood.

Claudia J. Lovelette and Angela S. Curran, Burke, Bosselman & Weaver, Chicago, Ill., for Northern Trust Co.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

P.M.F. Services, Inc. ("P.M.F.") and Richard Rueth ("Rueth") have sued Daniel Grady, individually and doing business as PMF Services ("Grady"),[1] his wife Lynn

---

1. As that designation makes obvious, there is an inherent potential for confusion between "P.M.F. Services, Inc." and "PMF Services." In fact, though none of the litigants seems to have focused on it, Grady's bank account and checks reflect even more—they use "P.M.F. Services" (periods and all). Indeed, the crux of plaintiffs' Complaint is that Grady used the similarity to

Grady, Mount Greenwood Bank ("Mt. Greenwood") and the Northern Trust Company ("Northern"), alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") as well as state law claims of conversion and negligence.[2] Mt. Greenwood and Northern have moved to dismiss the Complaint as to them under Fed.R.Civ.P. ("Rule") 12(b)(6) for failure to state a claim on which relief may be granted and, in the case of Mt. Greenwood, under Rule 9(b) for failure to plead fraud with particularity. For the reasons stated in this memorandum opinion and order, Mt. Greenwood's motion is granted in its entirety and Northern's motion to dismiss the conversion count is granted. Northern's motions to dismiss or for a more definitive statement of the negligence count are denied.

### FACTS [3]

P.M.F. is an Indiana corporation (¶ 2). Rueth is identified only as a citizen of Indiana. His relationship to P.M.F. is not alleged, although he "has been caused to expend and become liable for large sums of money necessary to finance and continue the business of P.M.F." (¶ I.23). Illinois

citizen Grady was an employee of P.M.F. Finally, Mt. Greenwood and Northern are Illinois banking companies.

In April 1986 Grady opened an account at Mt. Greenwood as a sole proprietor doing business as "PMF Services" (¶ I.8). From then through August 1987 he stole checks belonging to P.M.F.,[4] transported them to Illinois and deposited them in his Mt. Greenwood account (¶¶ I.9, 10). Grady later withdrew funds from the account for his benefit and that of his wife (¶ I.13).

Nothing in the Complaint indicates how many checks Grady stole or deposited or how many withdrawals he made. Its ¶ I.11 asserts Mt. Greenwood "knew or should have known" the checks were stolen and that accepting those checks therefore violated 18 U.S.C. § 2315 ("Section 2315"). Similarly, its ¶ I.12 asserts Mt. Greenwood sent statements on Grady's "PMF Services" account to Grady's home rather than to P.M.F., thereby furthering a fraudulent scheme in violation of the mail fraud statute (18 U.S.C. § 1341 or "Section 1341"). Mt. Greenwood profited from the scheme through the service charges on Grady's account and by investing the account balance (¶ I.21).

steal from P.M.F. With callous disregard for the reader, plaintiffs' counsel has done nothing to minimize the confusion in the Complaint and later memoranda. Rather counsel has maximized the confusion by referring indiscriminately to "PMF Services, Inc." and "P.M.F. Services" as well. Unfortunately, counsel does not stop there. Despite the presence of two plaintiffs and four defendants, the terms "plaintiff" and "defendant" are often used in the singular, leaving the reader to puzzle out which plaintiff or which defendant is referred to. Similarly, the term "defendants" is often used when counsel does not appear to be referring to all the defendants. And the list could go on—counsel uses possessives without apostrophes, leaving the reader to guess whether he intends a singular or plural possessive, etc. Such sloppy pleading and briefing are inexcusable as a matter of courtesy as well as because of their impact on defendants' ability to respond. This opinion ultimately dismisses the Complaint against Mt. Greenwood Bank and dismisses one count against Northern Trust Company on substantive grounds, but it also contemplates the possibility that counsel may seek to file an amended complaint to cure the many defects. If he does that, counsel would be advised to ensure that the amended complaint is also readable.

**2.** RICO citations will take the form "RICO § —" or simply "Section—," in each instance referring to the numbering in Title 18. As for the state law claims, they are appropriately before this Court both under the doctrine of pendent jurisdiction and because of diversity of citizenship (all plaintiffs are Indiana citizens, while each defendant is solely an Illinois citizen).

**3.** Rule 12(b)(6) principles require this Court to accept as true all well-pleaded factual allegations, drawing all reasonable inferences in plaintiffs' favor (*Marmon Group, Inc. v. Rexnord, Inc.*, 822 F.2d 31, 34 (7th Cir.1987) (per curiam)). Complaint citations will use numbers only, referring first to the count (omitting the word "Count") and then to the paragraph (e.g., "¶ II.4"). Where a paragraph precedes the counts it will be cited simply, e.g., "¶ 2."

**4.** ¶ I.9 says the checks belonged to "plaintiffs," an example of the confusion referred to in n. 1. Yet the overall context of the Complaint seems to indicate the stolen checks belonged to P.M.F. rather than to it and Rueth. If this conclusion is mistaken, counsel is invited to clarify his allegations if he elects to file an amended complaint.

Northern's alleged involvement was less extensive than that of Mt. Greenwood. It was the payor bank[5] on numerous checks it paid over the forged endorsement of P.M.F. (¶ IV.1.).

## CONTENTIONS OF THE PARTIES

Plaintiffs say those allegations state these RICO claims against Mt. Greenwood:

1. Mt. Greenwood participated directly and indirectly in the conduct of P.M.F. through a pattern of racketeering activity in violation of RICO § 1962(c).

2. Mt. Greenwood maintained an interest in and control over P.M.F. through a pattern of racketeering activity in violation of RICO § 1962(b).

3. Mt. Greenwood invested its income from the account in its own operations in violation of RICO § 1962(a).

Because each violation assertedly injured P.M.F. and Rueth in their business and property, under Complaint Count I they assert liability under RICO § 1964(c).

P.M.F. also says Mt. Greenwood converted P.M.F.'s checks by accepting Grady's forgeries (Count III) and negligently breached its duty of reasonable care to P.M.F. when it negotiated checks under a forged endorsement (Count V). P.M.F. says Northern converted its funds by paying on the forged P.M.F. endorsement (Count IV) and was also negligent in doing so (Count V).

Mt. Greenwood raises six challenges to the RICO count:

1. Rueth's claim must be dismissed because it is not alleged he was directly harmed by any RICO violation.

2. Allegations of the predicate offenses—mail fraud and receiving stolen property—are insufficient.

3. There is no allegation of a pattern of racketeering activity.

4. P.M.F. was not harmed "by reason of" Mt. Greenwood's investment in itself, so the claim based on RICO § 1962(a) fails.

5. Mt. Greenwood had no "interest" or "control" over P.M.F., so the claim based on RICO § 1962(b) fails.

6. Mt. Greenwood did not participate in or conduct the affairs of P.M.F., so the claim based on RICO § 1962(c) fails.

As for the conversion claims, each of Mt. Greenwood and Northern contends the Complaint does not adequately allege the necessary elements of such an action. Finally, as to the negligence claims, Mt. Greenwood says it had no duty of reasonable care to P.M.F. (a predicate for negligence liability), while Northern says the negligence count is too vague to state a claim.

## RICO

RICO § 1964(c) creates a private cause of action for "any person injured in his business or property by reason of a violation of section 1962." Pleading RICO violations and the consequent private cause of action is a legal field strewn with pitfalls. Plaintiffs' counsel has managed to land in many of them. As will be seen, many of the problems represent pleading errors rather than the legal impossibility of pleading RICO violations, so counsel may perhaps be entitled to another try.

### 1. *Rueth's RICO Standing*

■ As already pointed out, all the Complaint alleges about the relationship between Rueth and P.M.F. is that Rueth became liable for large sums "to finance and continue the business of P.M.F." (¶ I.23). No acts by Mt. Greenwood are asserted to have caused direct (rather than purely derivative) harm to Rueth. When Mt. Greenwood pointed out that deficiency, plaintiffs ignored the issue. Perhaps Rueth can allege facts that would establish his entitlement to recovery under RICO (though that appears doubtful from the nature of the banks' alleged misdeeds[6]), but the current

---

5. ¶ IV.1 actually alleges Northern was the "payee bank," but it is clear from the context that counsel meant to assert Northern was the payor.

6. Should Rueth desire to replead, counsel's attention is directed to authority such as *Warren v. Manufacturers National Bank of Detroit*, 759 F.2d 542, 544–46 (6th Cir.1985) (sole stockholder, creditor and employee of corporate victim

Complaint does not even attempt to do so. Rueth is dismissed as a Count I plaintiff.

### 2. *Predicate Offenses*

To recover under RICO, P.M.F. must show it was harmed by a "pattern of racketeering activity." As the next section of this opinion reflects, this Court need not fully retrace the tortuous path that concept has followed (and continues to wend) through the federal courts. For the moment it is enough to say P.M.F. alleges multiple violations of 18 U.S.C. §§ 1343 and 2315, each of which is a predicate offense (see RICO § 1961(1)).

▮ When alleged predicate offenses sound in fraud, Rule 9(b) requires pleading "with particularity" (*Haroco v. American National Bank and Trust Co. of Chicago*, 747 F.2d 384, 405 (7th Cir.1984), *aff'd on other grounds*, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985)). That requirement clearly applies to the Complaint's allegations of mail fraud, and just as clearly that requirement has not been met here. As this Court's former colleague Honorable Susan Getzendanner stressed in *McKee v. Pope Ballard Shepard & Fowle, Ltd.*, 604 F.Supp. 927, 930–31 (N.D.Ill.1985) (citations omitted):

> [A]t the least, a plaintiff pleading fraud must "specify the time, place and contents of any alleged false representations, and the full nature of the transaction." ... This should include the identity of the person making the misrepresentations, and how the misrepresentations were communicated to the plaintiff.... The identity of those making the misrepresentations is crucial. Courts have been quick to reject pleadings in which multiple defendants are "lumped together"

and in which no defendant can determine from the complaint which of the alleged misrepresentations it is specifically charged with having made, nor the identity of the individual by whom and to whom the statements were given, nor the situs and circumstances of the conversation, nor ... the date of the utterance.

P.M.F.'s Complaint fails on every item identified in *McKee*.

P.M.F. apparently seeks to cure those defects by appending to its memorandum copies of hundreds of checks it says were either deposited in or drawn on Grady's Mt. Greenwood account. Of course the issue on a Rule 12(b)(6) motion is the sufficiency of the Complaint, not whether P.M.F. can ultimately provide evidence to support liability. Because the complaint does not allege mail fraud with particularity, those portions must be dismissed.[7]

▮ More critically, Mt. Greenwood also says P.M.F. has not properly alleged use of the mails to further the fraud.[8] In that respect P.M.F. relies entirely on Mt. Greenwood's mailing of the account statements to Grady. P.M.F. says those mailings furthered the fraudulent scheme because, if the statements had been sent to P.M.F. rather than Grady, it would have discovered Grady's fraud earlier. Even if that last contention were assumed to be correct, it remains true that P.M.F. really complains of the bank's *nonmailing* to it—the failure to mail—and not of the mailing itself. That may readily be seen from the fact that if Mt. Greenwood had mailed copies of the statements to *both* P.M.F. and Grady's PMF Services, P.M.F. would have had no complaint. Thus in "mail fraud" terms the situation is no different than if Mt. Green-

---

has no RICO standing) and *Gallagher v. Canon U.S.A., Inc.*, 588 F.Supp. 108, 110–11 (N.D.Ill. 1984) (shareholder has no RICO standing).

7. Should P.M.F. replead mail fraud as a predicate offense its counsel should remember that it is the *fraudulent scheme*, not the use of the mails or the resulting loss, to which Rule 9(b)'s particularity requirement applies. Moreover, the need to plead the elements of fraud does not call for the pleading of evidence. Attaching copies of assertedly stolen checks adds a great

deal of bulk, but it does nothing toward pleading any of those elements.

8. Mt. Greenwood also seems to argue P.M.F. must allege the use of the mails with particularity. That might be the case if the content of the mailings themselves constituted the fraudulent misrepresentations. However, there is no reason to require P.M.F. to specify the dates on which (or the frequency with which) Mt. Greenwood sent statements to its customer. Notice pleading on that element is certainly sufficient.

wood had simply done nothing. Nor is this a purely formal difference. Federal mail fraud requires the use of the mails as a jurisdictional prerequisite. Nonuse of the mails cannot confer federal jurisdiction, for that means commerce is not involved.

P.M.F. offers nothing at all to support its impermissibly extended (and strained) version of the mail fraud concept in that respect.[9] Its mail fraud allegations are therefore insufficient. Unless it can cure that flaw, it may not replead mail fraud as a predicate offense.

Finally, Mt. Greenwood says the allegations of its receipt of stolen property are inadequate because of the conclusory allegation that it "knew or should have known" (¶ I.11) the checks were stolen. To the extent that Mt. Greenwood's position rests on Rule 9(b)'s particularity requirement in pleading fraud, it is misguided. That Rule says "knowledge ... may be averred generally." Moreover, the receipt of stolen property (the other predicate offense alleged by P.M.F.) is not "fraud," so the particularity requirement does not apply.[10]

■ Nevertheless the Complaint is defective. Section 2315 criminalizes the "knowing" receipt of stolen property that has moved across state lines after being stolen. Knowledge that the property was stolen is thus an essential element of the crime (e.g., *United States v. Forrest*, 620 F.2d 446, 450 (5th Cir.1980)). Yet ¶ I.11 does not allege knowledge, but rather that Mt. Greenwood "knew or should have known" the checks were stolen. Of course, it may be that P.M.F. (in the exercise of the objective good faith demanded by Rule 11) may be able to cure that defect by pleading Mt. Greenwood's knowledge. If so, and if it can cure its other RICO problems discussed in this opinion, it may replead.[11]

### 3. *Pattern of Racketeering Activity*

■ Mt. Greenwood also says the Complaint does not adequately allege a pattern of racketeering activity. Of course that is certainly true now that the allegations of predicate offenses have been found inadequate. But even if those defects are corrected as to the Section 2315 charges, Mt. Greenwood contends the Complaint will still be deficient because it does not allege "continuity plus relationship" (see, e.g., *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985); *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975–76 (7th Cir.1986)).

No extended discussion of this complex area is needed, because the present case is

---

**9.** This Court (*Dunham v. Independence Bank of Chicago*, 629 F.Supp. 983, 987–89 (N.D.Ill.1986)) and others (see, e.g., *United States v. Kuna*, 760 F.2d 813, 819–20 (7th Cir.1985)) have upheld mail fraud charges based on "lulling" mailings sent to the injured party—mailings that have delayed discovery of the fraud and hence did "further" the fraudulent scheme. But again that "furthered" requirement has substantive content and may not be treated as merely formalistic (see, e.g., *United States v. Maze*, 414 U.S. 395, 400–03, 94 S.Ct. 645, 648–50, 38 L.Ed.2d 603 (1974); *United States v. Kwiat*, 817 F.2d 440, 443–44 (7th Cir.1987)). Despite the need to address that issue, P.M.F. cites only to a case it identifies simply as "*McGee v. Gurstenburg & Co., Inc.*, (N.D.Illinois)." This Court's law clerk located that case as *McGee v. Gerstenberg and Co., Inc.*, No. 84 C 9778 and found the court's opinion of March 24, 1986 [Available on WEST-LAW, 1986 WL 4183]. It is not on point. In that case the account statements were mailed to the victim and might thereby have been an integral part of the scheme to defraud (*id.*, slip op. at 6).

**10.** This Court's research has found no case specifically discussing whether allegations of violations of Section 2315 in a RICO complaint must comply with Rule 9(b). This Court's colleague Honorable Nicholas Bua has assumed without discussion that Rule 9(b) does not apply: Compare his treatment of the mail-fraud and sale-of-stolen-property allegations in *Ichiyasu v. Christie, Manson & Woods International, Inc.*, 637 F.Supp. 187, 189 (N.D.Ill.1986).

**11.** P. Mem. 2–4 adverts to several facts that assertedly support an inference of Mt. Greenwood's knowledge. Of course, knowledge can be proved by circumstantial evidence (*Rugendorf v. United States*, 376 U.S. 528, 536–37, 84 S.Ct. 825, 830, 11 L.Ed.2d 887 (1964)). D.R. Mem. 5–7 responds that the matters identified do not justify an inference of knowledge. That of course is not relevant on a Rule 12(b)(6) motion, where well-pleaded facts (such as knowledge) are treated as true.

really controlled by *Liquid Air Corp. v. Rogers*, 834 F.2d 1297 (7th Cir.1987), which was decided during briefing on the current motion. *Liquid Air* held the pattern requirement could be satisfied by "the repeated infliction of economic injury upon a single victim in a single scheme" (*id.* at 1303–05). Clearly P.M.F. means to assert Grady took checks on many occasions over a 16–month period (though the Complaint does not say so in so many words). That surely satisfies the pattern element as described in *Liquid Air.*

### 4. *Violation of RICO § 1962(a)*

■ Section 1962(a) prohibits "any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, ... in ... the ... operation of, any enterprise...." In turn Section 1964(c) provides a cause of action to anyone injured in his business or property "by reason of" violations of Section 1962.

P.M.F. says Mt. Greenwood received service charges on Grady's account and earned interest on the balance in the account. Those funds were retained by Mt. Greenwood. But Mt. Greenwood says P.M.F. must do more under Section 1964(c): It must allege that the investment back into Mt. Greenwood harmed P.M.F. in order to satisfy the "by reason of" language of that section.

Our Court of Appeals has not yet addressed this aspect of civil liability under RICO, though a number of other courts have had occasion to do so. Several courts have embraced the reasoning urged by Mt. Greenwood, including one in this District (*Heritage Insurance Co. v. First National Bank of Cicero*, 629 F.Supp. 1412, 1417 (N.D.Ill.1986) (Getzendanner, J.)).[12] Some

few courts have rejected it (e.g., *Haroco, Inc. v. American National Bank*, 647 F.Supp. 1026, 1032–33 (N.D.Ill.1986) (Decker, J.)).[13]

It cannot be gainsaid that the line of cases exemplified by *Heritage Insurance* is consistent with both the literal language and the fair import of the statute. Nonetheless there has been a growing trend to read RICO very expansively in every respect, even at the expense of what would appear to be the statute's plain meaning (let alone the conventional approaches to statutory construction). In this Court's view, however, there is no reason (including the existence of Section 904 of the Organized Crime Control Act of 1970, Pub. L. 91–452, 84 Stat. 922, at 947 calling for liberal construction of the RICO title) to treat civil RICO as though it falls wholly outside the legal principles that normally apply to statutes and their application.

For example, it is certainly true that the victims of (say) mail fraud are most typically injured by the crimes themselves, not by the criminal's use of the proceeds in the operation of an "enterprise" as defined in Section 1961(4).[14] That in turn may mean that many such victims may not be able to state claims under Section 1962(a) under the *Heritage Insurance* approach. But it is really irrelevant that such a common-sense reading of Section 1964(c) will cause Section 1962(a) to produce a less broad sweep of civil liability than can be asserted under (say) Section 1962(c).

It should not be forgotten that civil RICO (Section 1964) was a late addition, spot-welded to an already fully-structured criminal statute with defined goals—a criminal statute that (to mix a metaphor) had been several years in gestation (with a correspondingly extensive legislative history).[15] That being true, it should not occa-

12. See also, e.g., *Omega Construction Co. v. Altman*, 667 F.Supp. 453, 464–65 (W.D.Mich.1987); *Airlines Reporting Corp. v. Barry*, 666 F.Supp. 1311, 1314–15 (D.Minn.1987) (citing cases); *Cincinnati Gas & Electric Co. v. General Electric Co.*, 656 F.Supp. 49, 83–84 (S.D.Ohio 1986).

13. Accord, *Louisiana Power & Light Co. v. United Gas Pipe Line Co.*, 642 F.Supp. 781, 805–07 (E.D.La.1986).

14. This general point is made in *Louisiana Power*, 642 F.Supp. at 806–07.

15. Indeed, though this Court has not troubled (and has not troubled its law clerk) to make an exhaustive search of Title 18, it knows of no other private civil cause of action embedded in the body of federal statutes labeled "Crimes and Criminal Procedure."

sion any surprise, nor should it lead to a strained reading of the statutory language, simply because a more normal and common-sense reading of Section 1964 does not produce a totally seamless result.

Viewed in its original (and present) form as a *criminal* statute, Section 1962 attacks the various perceived evils flowing from "racketeering activity," and from the ill-gotten gains derived from that activity, that led to the adoption of criminal RICO in the first place:

1. Section 1962(a) is principally aimed at the use of those illicit gains (a) to acquire interests in businesses (whether or not such businesses are otherwise legitimate), (b) to set up such businesses or (c) to operate such businesses.

2. Section 1962(b) is aimed at the use of racketeering activities to take over or to maintain any interest in, or control of, such businesses.

3. Section 1962(c) is aimed at individuals employed by or associated with any "enterprise" (a broadly expansive term) who engage in racketeering activity to conduct or participate in the conduct of the enterprise's affairs.

In each instance the crime (and the proof of crime) is complete without the government's need to identify with particularity every victim (or indeed any specific victim) of the offense.

By contrast Section 1964's private *civil* remedy mandates the identification of such victims, in order that they have standing to sue. Most importantly, each such victim must have been "injured in his business or property by reason of a violation of section 1962...." Hence the nature of the claim necessarily depends on the nature of the "violation"—and in each instance the specific subsection of Section 1962 makes the violation not the conduct of racketeering activity alone, but rather the use of that racketeering activity in the particular way the subsection declares unlawful. Once again that means a specific subsection—in this instance Section 1962(a)—need not provide a universal remedy to serve the purposes, or to fit the mandate, of Section 1964. This Court therefore joins the courts referred to in n. 12 and other courts that have reached like results.

In terms of this case, P.M.F. has not identified any way it was injured "by reason of" Mt. Greenwood's having used the service charges or interest earned on Grady's account to fund Mt. Greenwood's own operations. That being so, P.M.F. has failed to state any claim grounded in a RICO § 1962(a) violation.

### 5. *Violation of RICO § 1962(b)*

■ Section 1962(b) makes it illegal for "any person through a pattern of racketeering activity ... to acquire or maintain, directly or indirectly, any interest in or control of any enterprise...." P.M.F. says Mt. Greenwood acquired P.M.F.'s money through a pattern of racketeering activity and that is a sufficient "interest" in P.M.F. to satisfy Section 1962(b).

P.M.F. offers no authority for that surprising proposition.[16] While Mt. Greenwood may perhaps have obtained a possessory interest in *funds* rightfully belonging to P.M.F.,[17] it certainly obtained no interest in P.M.F. itself, and that is the operative requirement under Section 1962(b).[18]

---

**16.** P.M.F. does refer (albeit by an incorrect citation) to *Sutliff, Inc. v. Donovan Companies, Inc.*, 727 F.2d 648, 653 (7th Cir.1984) for the proposition that "control" need not be formal, as for example by acquiring a majority of the stock of a corporation. True enough, but that does not come close to making P.M.F.'s case. In *Sutliff* the plaintiff enterprise alleged defendants had directly caused plaintiff to enter into many transactions it would otherwise not have (*id.* at 651). That is "control" as the term is normally used. P.M.F. has made no allegations that Mt. Greenwood exercised any such control here.

**17.** Once again this Court makes no finding on that score, of course. It merely accepts P.M.F.'s allegations, as Rule 12(b)(6) requires.

**18.** This Court's research has identified no case where a civil plaintiff or the government has asserted a Section 1962(b) violation based solely on defendant's possession of funds of an enterprise. If that were sufficient, extended judicial discussions of the "interest in or control of any enterprise" language such as that in *United States v. Jacobson*, 691 F.2d 110, 112–13 (2d Cir.1982) would be unnecessary. In *Jacobson* defendant had unquestionably gotten money from the enterprise wrongfully (*id.* at 111–12),

Hence the Complaint fails to state a claim under Section 1964(c) for a violation of Section 1962(b).

### 6. *Violation of RICO § 1962(c)*

█ Section 1962(c) makes it unlawful for "any person employed by or associated with any enterprise ... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." Mt. Greenwood points out there are no allegations it was either "employed by or associated with" P.M.F. or conducted or participated in the conduct of P.M.F.'s affairs. It has advanced a detailed legal argument to that effect, supported by extensive citation to case authority.

How does P.M.F. respond? This way (P. Mem. 6):

> Mount Greenwood had an association and was acting in concert with Daniel Grady pursuant to the account relationship established in its knowing receipt of checks belonging to the Plaintiff. Furthermore, Grady was an employee of the Plaintiff who participated directly in the affairs of the company. The Bank's association with Grady enabled it to receive the stolen checks. For the purposes of 1962(c), the persons are both Grady and Mount Greenwood and the victim or the enterprise is the Plaintiff.

That is the *entire* argument counsel advances to justify pleading a violation of Section 1962(c). It will not do the job. Even apart from impermissibly asserting facts not in the Complaint, counsel ignores *both* arguments made by Mt. Greenwood. Section 1962(c) prohibits associates or employees of enterprises from certain conduct. P.M.F. identifies itself as the RICO "enterprise," but it does not allege Mt.

Greenwood was either *its* associate or *its* employee. Rather it says Mt. Greenwood associated with someone—Grady—who happened to be P.M.F.'s employee. And *that* is not what the statute prohibits.

True enough, the element of "association" may be satisfied by a business relationship between the RICO "enterprise" and the defendant (*United States v. Yonan*, 800 F.2d 164, 167–68 (7th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 930, 93 L.Ed.2d 981 (1987)). But here—unlike the defendant in *Yonan*—Mt. Greenwood had no business relationship with P.M.F. but *only* a relationship with Grady. In the same way, there are no allegations of Mt. Greenwood's participation in P.M.F.'s affairs.[19]

In sum, the Complaint contains no allegations that would support claims that Mt. Greenwood was either associated with P.M.F. or participated in the conduct of P.M.F.'s affairs. That means the RICO count must also be dismissed to the extent it is premised on violations of Section 1962(c).

### CONVERSION

#### 1. *Mt. Greenwood*

█ Count III alleges Mt. Greenwood (1) was the depository bank of numerous checks whose endorsement had been forged by Grady, (2) failed to act in good faith and a commercially reasonable manner in dealing with the checks, (3) still retains the proceeds of the checks and (4) wrongfully paid on forged endorsements. Those allegations are said to state a claim for conversion.

Uniform Commercial Code § 3–419 (Ill. Rev.Stat. ch. 26, ¶ 3–419)[20] says:

---

yet the court still found it necessary to explore whether defendant had obtained an interest in or exerted control over the enterprise.

**19.** Section 1962(c) can be satisfied by indirect as well as direct participation. For example, had P.M.F. alleged Mt. Greenwood controlled or directed Grady's acts, the allegations on *this* component of the RICO claim might be enough. But the Complaint contains no such allegations, and it is of course open to serious question

whether P.M.F. could make them in good conscience.

**20.** All further references to UCC provisions will also take the form "Section—." Even though this opinion thus uses "Section—" to refer to provisions in more than one statute, that multiple usage should not be a source of any confusion. All the numbers in the different statutes are sufficiently different to avoid confusion, and that is particularly true of UCC.

(1) An instrument is converted when ...

(c) it is paid on a forged endorsement.

However, the Illinois Code Comment to that section makes it clear that section does not apply to P.M.F. and Mt. Greenwood (Section 3–419, comment (1)(c), *supp.*):

> Payment in the strict sense occurs only when a drawee pays a check, and this paragraph covers such a payment on a forged indorsement in an action by a payee. Actions by a payee against a depositary bank taking a check on a forged indorsement rest on a common law conversion theory under § 1–103, since this paragraph does not negate that basis.[21]

Illinois common law has long recognized a conversion cause of action for a payee against a depositary bank (*Independent Oil Men's Association v. Fort Dearborn National Bank*, 311 Ill. 278, 280–81, 142 N.E. 458, 459 (1924)). Common-law conversion actions on a check require the plaintiff payee to prove (1) ownership or other right to possession of the check, (2) forged endorsement of plaintiff's signature and (3) unauthorized cashing of the check by defendant bank (*Burks Drywall, Inc. v. Washington Bank & Trust Co.*, 110 Ill. App.3d 569, 573, 66 Ill.Dec. 222, 226, 442 N.E.2d 648, 652 (2d Dist.1982)).[22]

In its current form, Count III alleges neither that *P.M.F.* was the owner or payee of the checks nor that *P.M.F.'s* endorsement was forged. Count III must therefore be dismissed. Nevertheless it is clear from both the other counts and P.M.F.'s memoranda that it intended to plead those elements. Accordingly P.M.F. may amend its flawed pleading.

Recognizing P.M.F. can correct those errors, Mt. Greenwood also says Section 3–419(3) precludes actions by the payee of a check against a depositary bank. Section 3–419(3) says in part:

> a depositary or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands.

In its most natural reading, that provision means a payee may bring a conversion action against a depositary bank only when the depositary bank did not act with commercial reasonableness *or* when it retains the funds (or both, of course).[23] Here P.M. F. *has* alleged both that Mt. Greenwood did not act in a commercially reasonable manner and that it retains the funds.[24] Hence an appropriate amendment will state a via-

---

**21.** [Footnote by this Court] P.M.F. relies on *Bellflower Ag Service, Inc. v. First National Bank & Trust Co. in Gibson City*, 130 Ill.App.3d 80, 85 Ill.Dec. 399, 473 N.E.2d 998 (4th Dist.1985) to support its claim. *Bellflower* is on all fours with this case and did indeed hold a depositary bank liable to a check's payee when the payee's indorsement was forged by a faithless employee. Yet *Bellflower* never says whether liability is grounded in Section 3–419(1) or in the common law. Thus the case is consistent with the text's conclusion that the current claims are not grounded in Section 3–419(1).

**22.** *Burks Drywall* was a conversion action under Section 3–419 rather than common law, but there is no reason to believe the elements differ. In any case, plaintiff's possession of the converted property has always been regarded as an essential element of a conversion claim (e.g., *First National Bank of Chicago v. Pease*, 168 Ill. 40, 48 N.E. 160 (1897)).

**23.** P. Mem. 8–9 argues Section 3–419(3) does not limit a bank's liability at common law, but "affirms additional instances of liability." That is obviously mistaken. Clearly the section imposes a limitation on what a plaintiff may recover "in conversion or otherwise."

**24.** Mt. Greenwood also says P.M.F. now knows Mt. Greenwood has not retained any funds from the checks. Of course the current motion deals only with the allegations in the Complaint. However, the attachments to P. Mem.—checks drawn on the account Grady established at Mt. Greenwood—suggest Mt. Greenwood may be correct. P.M.F. should consider whether it can in good faith plead that Mt. Greenwood retains the funds before repeating its allegation. Of course, as long as P.M.F. can plead (and later show) Mt. Greenwood did not handle the checks in a commercially reasonable manner, the protections of Section 3–419(3) do not apply and it does not matter whether Mt. Greenwood has retained the funds.

ble claim.[25]

### 2. *Northern*

Count IV says Northern (1) paid on numerous checks bearing P.M.F.'s forged endorsement, (2) failed to act in good faith and a commercially reasonable manner in doing so and (3) still retains the proceeds of the checks. As with Mt. Greenwood, those allegations are insufficient to state a claim against Northern because there are no allegations P.M.F. was the payee of the checks and its endorsement was forged. Once cured, the Complaint will state a claim.[26]

Northern says the Complaint is also inadequate because it does not charge (1) the identity of Northern's customer (on whose account the checks were drawn), (2) the amounts and dates of the checks and (3) the type of indorsement on each check. Northern cites no authority requiring such detailed pleading in a Complaint.[27] It argues that without knowing the alleged makers of the checks it cannot frame an answer to the Complaint, but that is just the sort of situation that calls for Rule 8(b)'s statement that a party "is without knowledge or information sufficient to form a belief as to the truth of an averment." P.M.F. can scarcely complain if its own lack of particularization forces an uninformative answer. And of course dis-

covery is available to both sides to flesh out the skeletal pleadings.

To the extent Northern really complains that it cannot evaluate the merits of potential defenses (e.g., under Section 3–406 for contributing to the forgery) or crossclaims (e.g., against Mt. Greenwood under Section 4–207 for breach of presentment warranty), its concern is really misplaced. It is up to Northern to develop the factual basis for its defenses and crossclaims, and again discovery is the standard means for doing that.

Northern has moved in the alternative for a more definite statement pursuant to Rule 12(e). Such motions are disfavored, particularly where, as here, the information a party seeks is available through discovery. True enough, the Complaint is not a model of clarity, and counsel may wish to expand its allegations when preparing the amended complaint, but once the failure to identify P.M.F.'s interest in the checks is cured, Northern will be able to answer.

### NEGLIGENCE

Count V says both Mt. Greenwood and Northern failed to use reasonable care in handling checks owned by and payable to P.M.F. and are therefore liable to it in negligence. Each claim may be dealt with briefly.

---

**25.** Mt. Greenwood argues Section 3–419 as a whole was intended to preclude a payee from direct claims against a depositary bank. Instead, Mt. Greenwood says, the payee must proceed against the payor bank (which is not protected by Section 3–419(3)), and the payor may in turn pursue depositary banks for breach of warranties of presentment. Courts that have accepted that view have also decried it as inefficient and unfair (e.g., *Denn v. First State Bank of Spring Lake Park*, 316 N.W.2d 532, 537 (Minn.1982); *Jackson Vitrified China Co. v. People's American National Bank of North Miami*, 388 So.2d 1059, 1063 (Fla.App. 3d Dist.1980)). Even so, Mt. Greenwood's argument is misplaced. As the text indicates, the payee is limited to an action against payor banks only when the depositary bank has acted in good faith and in a commercially reasonable manner (*Hydroflo Corp. v. First National Bank of Omaha*, 349 N.W.2d 615, 619 (Neb.1984)). Neither *Denn* nor *Jackson Vitrified* (relied on by Mt. Greenwood) is to the contrary. In *Denn* the jury had found the depositary bank to have acted reasonably (316 N.W.2d at 533). While the facts are less

clear, the court in *Jackson Vitrified*, 388 So.2d at 1061 suggests there is no bar to direct action against depositary banks that have not acted in a commercially reasonable manner.

**26.** Northern cannot avail itself of the protections of Section 3–419(3)—nor does it try to— because it is a payor bank.

**27.** Originally the Rules clearly embraced the goal of notice pleading as directed by Rule 8(a) (see also the skeletal forms of complaints in the Appendix of Forms to the Rules—forms specifically labeled by Rule 84 as "sufficient under the rules and ... intended to indicate the simplicity and brevity of statement which the rules contemplate"). Despite the trend of some of the recent case law away from that approach, courts should not go so far in demanding fact pleading as Northern urges. Thus Form 5 in the Appendix of Forms specifically allows a summary allegation of the total due for goods sold and delivered where parties have dealt with each other over an extended time period—a reasonably analogous situation.

### 1. *Mt. Greenwood*

Mt. Greenwood says its duty to use reasonable care extends only to its customers and, because P.M.F. is not its customer, it cannot be liable in negligence to P.M.F. P.M.F. responds Section 3–419 imposes such a duty. Neither party cites to any case law discussing a depository bank's liability to a payee in negligence (as opposed to liability under the UCC or for conversion).

Plaintiffs in P.M.F.'s position would gain nothing by allowing negligence claims. Under common law conversion and Section 3–419(3) as interpreted in this opinion, payees may recover up to the amount a bank retains *without* a showing of negligence, and up to the full amount of the checks if a bank fails to act either in good faith or in accordance with reasonable commercial standards. Whether the limitation of liability of Section 3–419(3) protects Mt. Greenwood thus depends entirely on whether it was negligent in any event.[28]

Even apart from any limitation imposed by the Hohfeldian requirement of a "right-duty" pairing in negligence as in all other causes of action, any negligence action by a noncustomer payee against a depositary bank is necessarily controlled by Section 3–419. There is no reason to recognize an independent cause of action in negligence. Mt. Greenwood is dismissed as a defendant in Count V.

### 2. *Northern*

Northern has raised no objections to the negligence count other than those it raised on the conversion count. Most of those objections fail for the same reasons discussed earlier. In this instance, however, Count V does allege the checks Northern paid were owned by and payable to P.M.F., thus avoiding the flaw in P.M.F.'s statement of the conversion claim. Nor does Northern challenge that as a sufficient factual allegation to raise a legal duty of due care on its part to P.M.F.

Consequently Count V states a claim against Northern.

## CONCLUSION

Rueth does not have standing to assert a RICO claim against Mt. Greenwood. He is dismissed from the current Complaint as a plaintiff.

P.M.F.'s RICO claims against Mt. Greenwood fail to state a cause of action for which relief may be granted for the many reasons identified in this opinion. Mt. Greenwood is dismissed as a defendant to Count I of the present Complaint.

P.M.F. has not stated claims upon which relief may be granted for conversion against either Mt. Greenwood or Northern. Counts III and IV are accordingly dismissed.

Northern's motion to dismiss Count V is denied. Northern's alternative motion for a more definitive statement of Count V is also denied. It is ordered to answer Count V on or before March 21, 1988.

This Court has not sought to opine fully as to plaintiffs' possible ability to recast their dismissed claims in viable form—nor should it have done so. Amended Rule 11 has rendered obsolete the type of thinking that viewed pleading as a kind of game, unrelated to the pleader's ability ultimately to prove the facts as reshaped to keep a plaintiff in court. If either or both plaintiffs opt to try again via an amended complaint, each defendant is ordered to answer or otherwise plead within 14 days after actual delivery of the new pleading to its counsel. This action is scheduled for a status hearing March 31, 1988 at 9 a.m.

---

**28.** Even if the "reasonable person" standard of negligence somehow reaches lesser derelictions than those encompassed by the "reasonable commercial standards" criterion of Section 3– 419(3)—an unlikely proposition—that section would still protect Mt. Greenwood, because the limitation on liability applies to actions "in conversion or otherwise."