**P.M.F. SERVICES, INC., Plaintiff,**

v.

**Daniel J. GRADY, individually and d/b/a PMF Services, Lynn Grady, Mount Greenwood Bank and the Northern Trust Company, Defendants.**

No. 87 C 9113.

United States District Court,
N.D. Illinois, E.D.

June 2, 1988.

Michael R. Collins, Harold E. Collins & Assoc., Ltd., Chicago, Ill., for plaintiff.

Thomas J. Swabowski, Barclay, Damisch & Sinson, Ltd., Chicago, Ill., for defendant Grady.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

P.M.F. Services, Inc. ("P.M.F.") has filed an Amended Complaint (the "Complaint") against its former employee Daniel Grady ("Daniel"), his wife Lynn Grady ("Lynn"), Mount Greenwood Bank ("Mt. Greenwood") and The Northern Trust Company ("Northern"). P.M.F. asserts Daniel and Lynn are liable under the private civil remedy provision of the Racketeer Influenced and Corrupt Organizations Act ("RICO"),

18 U.S.C. § 1964 ("Section 1964"[1]), as well as for common law fraud, while Mt. Greenwood and Northern are variously charged with conversion and breach of warranty.[2]

On March 10, 1988 this Court (in the "Opinion," 681 F.Supp. 549) dismissed P.M.F.'s original complaint in response to motions filed by Mt. Greenwood and Northern. P.M.F. then filed the Complaint seeking to cure (or at least not to repeat) the defects identified in the Opinion. Mt. Greenwood and Northern are apparently satisfied as to the counts now naming them: They have filed answers to the Complaint. But now each of Daniel and Lynn moves under Fed.R.Civ.P. ("Rule") 12(b)(6) for dismissal from the Complaint because of its failure to state claims for which relief may be granted against them.[3] For the reasons stated in this memorandum opinion and order:

 1. Lynn's motion is granted in its entirety, and she is dismissed as a defendant.

 2. Daniel's motion is granted as to the RICO count but denied as to the state law count.

### Facts[4]

In April 1986 Daniel opened an account at Mt. Greenwood as a sole proprietor doing business as "PMF Services." From then through August 1987 he stole more than 85 checks owned by P.M.F. and upon which P.M.F. was the payee. Daniel then transported the stolen checks from Indiana to Illinois, inserted forged endorsements and deposited the checks in the account at Mt. Greenwood. Lynn conspired with Daniel in the scheme, and both withdrew funds from the account for their personal benefit.

Daniel also wrote checks to himself or to cash on P.M.F.'s checking account and deposited those funds at Mt. Greenwood. Here too he used the proceeds for his own benefit and Lynn's as well.

### Lynn's Motion

Lynn joins in the arguments made by Daniel and discussed later in this opinion. Those arguments would, of course, win or lose for the reasons stated in that discussion. However, Lynn also contends the Complaint fails to allege her personal involvement in the alleged scheme in a way that would make her liable either under RICO or for common law fraud. Those contentions require separate consideration before the Gradys' joint arguments are discussed.

### 1. RICO

■ Section 1964(c) creates a private right of action for "[a]ny person injured in his business or property by a violation of section 1962." Unfortunately Section 1964(c) does not specifically designate whom the injured party may sue. Presumably the only appropriate defendants are those who have violated Section 1962 (cf. *D & S Auto Parts, Inc. v. Schwartz*, 838 F.2d

---

1. All further references to RICO (found in Title 18, even though the private action is civil rather than criminal in nature) will also take the form just used in the text: "Section—" (referring to the Title 18 numbering, not to RICO's internal numbering). Other relevant provisions of Title 18 will also be cited "Section—."

2. Jurisdiction over the state law claims is based on diversity of citizenship: P.M.F. is an Indiana citizen (in terms of both factors by which a corporate party's citizenship is tested under 28 U.S.C. § 1332(c)), and all defendants are Illinois citizens (again taking both factors into account as to the corporate defendants). There is no dispute that the sum in controversy, exclusive of interest and costs, exceeds $10,000.

3. P.M.F. objects to Daniel's motion because he refused to answer the original complaint (asserting his right against self-incrimination) and now moves to dismiss. P.M.F. never challenged Daniel's original refusal to answer, and that issue has been mooted (at least for now) by the Complaint and motion. As for the Rule 12(b)(6) motion, Rule 12(h)(2) clearly allows that "defense" to be asserted at any point through trial on the merits.

4. Rule 12(b)(6) principles require this Court to accept as true all well-pleaded factual allegations, drawing all reasonable inferences in P.M.F.'s favor (*Marmon Group, Inc. v. Rexnord, Inc.*, 822 F.2d 31, 34 (7th Cir.1987) (per curiam)). Because only Daniel and Lynn are parties to the present motion, the statement in the text omits the allegations against Mt. Greenwood and Northern.

964, 966–68 (7th Cir.1988) (no vicarious liability in civil RICO)).

P.M.F. says Lynn conspired with Daniel to violate Section 1962(c) and thereby violated Section 1962(d). *Otto v. Variable Annuity Life Insurance Co.*, 814 F.2d 1127, 1137 (7th Cir.1986) (citations omitted) described hornbook conspiracy law in the RICO context:

> To state a claim for conspiracy, a plaintiff must allege the agreement of each defendant to the operation of the conspiracy.... A complaint may be dismissed if it contains only conclusory, vague and general allegations of conspiracy.

Count I's only allegations against Lynn (other than its purely legal-conclusory assertions) are these:

> 1. Lynn withdrew funds from the account (Complaint ¶ 12).
> 2. She "conspired with [Daniel] in conducting this check theft and forgery scheme, *by* knowingly using the proceeds of P.M.F.'s checks" (Complaint ¶ 13, emphasis added).

Those allegations are obviously deficient in more than one respect.

First, no conspiratorial agreement is alleged between Daniel and Lynn. It will not do for P.M.F. to rely on the mere possibility that such an agreement might be inferred simply from Lynn's knowing use of the check proceeds (and her close relationship to Daniel). P.M.F.'s Complaint must allege such an agreement itself, not just a possible basis for inferring an agreement. Indeed, P.M.F.'s very failure to make the necessary allegation really supports the opposite inference—the absence of a conspiratorial agreement.

That difficulty might perhaps be cured,[5] but the second problem is more trouble-some. Complaint ¶ 13 says Lynn conspired in a "check theft and forgery scheme" and says nothing at all about a conspiracy to violate Section 1962(c). That latter provision does not penalize theft or forgery as such. Instead it criminalizes the activity of persons employed by, or associated with, an enterprise in "conduct[ing] or participat[ing], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."

Nothing in the Complaint suggests Lynn did *that*, or entered into an agreement with Daniel to do *that*. Nor is this a merely semantic distinction, for civil RICO recovery under Section 1964(c) is limited to those harmed "by reason of" violations of Section 1962. As the Opinion, 681 F.Supp. at 555–56 sought to make clear to P.M.F., that language means those who are merely harmed by predicate offenses are not always proper RICO plaintiffs. P.M.F. can assert a RICO claim against Lynn only if she conspired with Daniel to conduct P.M.F.'s affairs through a pattern of racketeering activity—not if she merely conspired to steal from P.M.F.[6]

Maybe P.M.F. can (subject to Rule 11's strictures) allege a RICO-violative agreement between Daniel and Lynn, but it certainly has not done so here. Lynn is dismissed as a defendant to Count I.

### 2. Fraud

■ P.M.F.'s Count II allegations against Lynn are even more bare-boned than those in Count I. She is said to have:

> 1. withdrawn funds from Daniel's account for her own benefit (Complaint ¶ 23) and

---

5. In these days of Rule 11's increasing importance, it is not as certain as it once was that a pleader who has omitted a crucial allegation can correct matters as soon as the court identifies the problem. Objective good faith, based on the necessary prior factual investigation, is now a precondition to a curative amendment.

6. Although the Second Circuit's reference in *United States v. Persico*, 832 F.2d 705, 713 (2d Cir.1987) to "two or more predicate acts" is an oversimplistic description of the RICO "pattern" requirement, its statement of the conspiracy requirement is unexceptionable and confirms the point just made in the text:

> Although proof of a RICO conspiracy requires a demonstration that a defendant agreed to commit two or more predicate acts, rather than a simple showing that the defendant agreed to join the conspiracy, the agreement proscribed by section 1962(d) is conspiracy to participate in a charged enterprise's affairs, not conspiracy to commit predicate acts.

2. done so "intentionally, maliciously, wilfully and wantonly with complete and total disregard for the rights of [P.M.F.]" (Complaint ¶ 26).[7]

Those allegations do not begin to state a claim for fraud, especially in light of Rule 9(b)'s requirement that the circumstances constituting fraud be stated with particularity.[8]

*Soules v. General Motors Corp.*, 79 Ill. 2d 282, 286, 402 N.E.2d 599, 601 (1980) (citations omitted) identifies the elements of an Illinois-based cause of action for fraud:

(1) false statement of material fact (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance.

P.M.F.'s Complaint fails to allege facts supporting *any* of those five elements.

It is conventional wisdom that a complaint's sufficiency is measured not by the legal labels the pleader attaches, but rather by whether the facts alleged make out a cause of action. Even so, it is not really incumbent on defendants and this Court to have to eliminate every possible basis for liability. Here the allegations against Lynn do not immediately suggest any legal theory supporting liability. She has pointed that out, and P.M.F. has responded without offering any theory at all.[9] Lynn is also dismissed as a defendant to Count II.[10]

### *Daniel's Motion*

#### 1. RICO

Daniel says Count I's RICO claim fails against him for two reasons:

1. No predicate offense of interstate transportation of stolen property (Section 2314) is alleged because none of the checks is said to have exceeded $5,000.

2. No predicate offense of mail fraud (Section 1341) is alleged because no use of the mails is charged.

Because predicate offenses must by definition be the stuff of which a pattern of racketeering activity is fashioned, Daniel reasons there is no RICO violation.

■ As to the first of those arguments, P.M.F. points to Section 2311, which defines "value" as used in Section 2314 to be "the aggregate value of all ... securities ... referred to in a single indictment," as assertedly allowing P.M.F. to aggregate the checks to reach the jurisdictional minimum. Of course there has been no indictment here, but that should not obscure the clear congressional intent as described in *Schaffer v. United States*, 362 U.S. 511, 517, 80 S.Ct. 945, 949, 4 L.Ed.2d 921 (1960) (footnotes omitted):

A sensible reading of the statute properly attributes to Congress the view that where the shipments have enough relationship so that they may properly be charged as a single offense, their value may be aggregated. The Act defines "value" in terms of that aggregate. The legislative history makes clear that the value may be computed on "a series of transactions."

Here the alleged transactions—though serial in form—are clearly so related that they could be "charged as a single offense" —in fact, were the government indicting Daniel it appears it would have to do just that (*United States v. Markus*, 555 F.Supp.

---

**7.** Complaint ¶ 24 also says Daniel wrote checks on P.M.F.'s account for Lynn's benefit, but it charges no wrongdoing on her part.

**8.** There is really no excuse for P.M.F.'s failure to satisfy that requirement. This Court dismissed the original complaint in part because its fraud allegations against Mt. Greenwood lacked the required specifics. Indeed, the Opinion, 681 F.Supp. at 553 dealt expressly with the types of allegations required.

**9.** Lynn also objected to Count II's prayer for a constructive trust on all property she obtained

from P.M.F.'s funds. Dismissal of Count II moots the issue. Nevertheless it is worth noting that the issue on a Rule 12(b)(6) motion is whether the Complaint states a claim for *any* kind of relief, not whether a specific form of relief is appropriate. Hence this dispute between the parties was really misplaced.

**10.** Because Lynn was named as a defendant only in the Complaint's first two counts, the rulings to this point extricate her from the entire lawsuit. That renders her no more than an interested bystander on the grounds for dismissal that she asserted jointly with Daniel.

375, 377–78 (D.N.J.), *aff'd*, 721 F.2d 442 (3d Cir.1983)).[11] Thus the Complaint does allege a violation of Section 2314.[12]

■ As for Daniel's second argument, P.M.F. Mem. 4 simply admits the Complaint does not properly allege mail fraud, given the Opinion's discussion of the use-of-the-mails requirement (681 F.Supp. at 553–54).[13] Because that leaves only one predicate offense charged (see n. 12), there is no present possibility that the Complaint alleges the necessary pattern of racketeering activity. Hence Count I is dismissed in its entirety.[14]

### 2. Fraud

■ This opinion has already spelled out the elements of common law fraud in Illi-

nois. Again it is clear the Complaint does not begin to allege those elements. On the other hand, the allegations just as plainly do state a claim for conversion (*Bender v. Consolidated Mink Ranch, Inc.*, 110 Ill. App.3d 207, 213, 65 Ill.Dec. 801, 806, 441 N.E.2d 1315, 1320 (2d Dist.1982) (citation omitted)):

> The essence of conversion is the wrongful deprivation of one who has a right to the immediate possession of the object unlawfully held.

Objects such as the checks Daniel is said to have stolen can be the subject of a conversion action (*United States v. Kallen (In re Oxford Marketing, Ltd.)*, 444 F.Supp. 399, 404 (N.D.Ill.1978), citing *Hayes v. Massachusetts Mutual Life Insurance Co.*, 125

---

**11.** In keeping with his frequent practice (noted in the Opinion, 681 F.Supp. at 554 n. 9, 556 n. 16), counsel for P.M.F. garbled his attempt to cite *Markus*—erring as to (1) the defendant's name, (2) the reporter volume *and* (3) the court! Courts are generally pleased to consult authorities on which a party wishes to rely. But first the court must be able to find them. Here wholly independent research by this Court's law clerk happened to come across the case despite counsel's misleading trail, but counsel may not be so lucky next time.

**12.** P.M.F. argues in passing that it has really charged 14 violations of Section 2314, a conclusion it reaches by dividing the $70,000 it says Daniel stole by the $5,000 minimum. P.M.F. offers no authority for its ability to divide a single series of transactions in that way. In any case, it is abundantly clear that the Complaint does not do so, and that is dispositive on the current motion. Nor can this Court speculate, on the paucity of facts tendered by P.M.F., whether the strands could properly be separated into multiple federal criminal offenses under Section 2314 consistently with *Schaffer* and its progeny. And before P.M.F. is tempted to essay that kind of division, its counsel would do well to review our Court of Appeals' most recent synthesis of the splintering of criminal activity for civil RICO "pattern" purposes (*Jones v. Lampe*, 845 F.2d 755, 758–59 (7th Cir.1988)).

**13.** P.M.F. does not explain why it filed an admittedly deficient Amended Complaint in the face of the Opinion.

**14.** P.M.F. Mem. 4 says it could properly allege use of the mails if given the opportunity to replead. That opportunity will not be granted for two reasons. First, P.M.F. has already been given a full opportunity to reframe its allegations, and it admits the Complaint fails for *pre-*

*cisely* the same reason as before. Second, each use of the mails P.M.F. now says it could allege (without, of course, explaining why it has not done so before this) would be insufficient:

1. Daniel's receipt of bank statements from Mt. Greenwood is the *same* mailing P.M.F. admits is insufficient under the Opinion, 681 F.Supp. at 553.

2. Daniel's receipt through the mails of cancelled checks that he drew on the Mt. Greenwood account is really the same thing as receipt of the statements (indeed, given universal banking practice, it would be surprising if the checks were not in the same mailings as the statements!).

3. P.M.F. offers no authority for considering Daniel's interception of mail addressed to P.M.F. as falling within Section 1341. True enough, that section does penalize one who "takes or receives" matter from the mails in furtherance of a fraudulent scheme. But that is just a reflection of the fact that mail fraud can be accomplished at either end of a mailing: sending or receiving. Certainly the apparent intent of Congress is to reach the *intended* recipient of mailings rather than those who intercept the mails. After all, there are specific statutes that criminalize unauthorized extraction from the mails (Sections 1702 and 1708), and the general rule is that the specific prohibition controls over the more general. This Court's research (though it did not engage in an exhaustive effort to do counsel's work for him) disclosed no reported opinions dealing with Section 1341 charges of the type P.M.F. would have to rely on.

Leave to file a second amended RICO count is therefore denied. If P.M.F. still believes it can justify mail fraud allegations, it may seek leave to refile (but only if it submits, together with the proposed amendment, a memorandum citing authority supporting the claim).

Ill. 626, 18 N.E. 322 (1888)). Count II therefore need not be dismissed, though P.M.F. did attach the wrong label to it.[15]

Daniel also objects to P.M.F.'s prayer for establishment of a constructive trust. Because he has styled his motion as one to dismiss or strike the Complaint, he will be treated as having moved to strike that portion of the prayer for relief (contrast n. 9). That motion must fail, because a constructive trust is an appropriate remedy when a defendant has received money or its equivalent belonging to plaintiff under such circumstances that defendant should not "in equity and good conscience" be allowed to retain it (*County of Lake v. X–Po Security Police Service, Inc.*, 27 Ill.App.3d 750, 755, 327 N.E.2d 96, 99–100 (2d Dist.1975)). That description fits the allegations here.

Daniel retorts that a trust must have a *res,* and the Complaint identifies no specific property purchased with the allegedly purloined funds. But he cites no authority requiring that a plaintiff identify the *res* of a constructive trust in its Complaint. P.M.F. is certainly right in saying (1) only Daniel knows where the money went and (2) P.M.F. is entitled to discovery to identify items that might be recovered. Daniel's motion to strike is denied.

### Conclusion

Because the Complaint does not state any claim for which relief may be granted against Lynn, she is dismissed as a defendant. Count I does not state a civil RICO claim against Daniel either, so it is dismissed entirely. Daniel's motion to dismiss Count II is denied, and he is ordered to answer that count on or before June 10, 1988.

This action is scheduled for a status hearing at 9 a.m. June 20, 1988, to be attended by counsel for Mt. Greenwood and Northern as well as P.M.F. and Daniel. At that time all parties should be prepared to discuss the further course of the litigation.

---

**15.** This opinion has focused on a conversion theory of liability to sustain Count II solely because it is the most obvious. After all, P.M.F. sues Mt. Greenwood and Northern on just that theory, though (puzzlingly) it does not assert the same theory against Daniel. If P.M.F. has any other potential theories, it will be expected to assert them (and soon), rather than continuing to rely on this Court to pull its chestnuts from the fire.